Filed 3/26/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LOANVEST I, LLC,<br><br>        Plaintiff and Appellant,<br><br>                v.<br><br>PAUL F. UTRECHT et al.,<br><br>        Defendants and Respondents. | A141564<br><br><br>(Alameda County<br>Super. Ct. No. RG12654982) |

Plaintiff Loanvest I, LLC (Loanvest) appeals from the dismissal of its cause of action against its former attorneys, Paul F. Utrecht and Utrecht & Lenvin, LLP (collectively Utrecht), after the court granted Utrecht's special motion to strike under the "anti-SLAPP"[1] statute (Code Civ. Proc., § 425.16).[2] Utrecht is being sued for malpractice by Loanvest, now under the control of James Madow, for allegedly disregarding the interests of Loanvest in order to protect the interests of the person who formerly controlled Loanvest in an action that Madow himself brought against Loanvest. After summarizing the complicated facts underlying the cause of action, we conclude, contrary to the trial court, that the malpractice claim fails to satisfy the first prong of the anti-SLAPP analysis. Thus, we do not reach the second prong of the analysis, leaving for consideration upon a summary judgment motion or other appropriate proceedings the multiple reasons for which the trial court concluded that Loanvest's claim lacks merit.

---

[1] "SLAPP" is an acronym for a strategic lawsuit against public participation.

[2] All statutory references are to the Code of Civil Procedure.

1

## Background

The following facts, which are taken from the second amended complaint, appear to be undisputed.

In 2008, Loanvest had a single member, South Bay Real Estate Commerce Group, LLC (South Bay), which was managed by Scott Carter, a relative of George Cresson, and subsequently by Cresson. In 2008, Carter, on behalf of South Bay, signed an "Operating Agreement" naming South Bay as Loanvest's manager and providing that anyone purchasing a membership interest in Loanvest would have no voting or management rights, and that the manager could be removed only for breach of fiduciary duty and by a super-majority vote of Loanvest's members. In 2009, Madow purchased a 70 percent interest in and became a member of Loanvest.

In November 2011, Madow added Loanvest and South Bay as defendants in an action he had filed in February 2011 against other entities allegedly owned and controlled by Cresson. This action, referred to as the "San Francisco action" (*Madow v. Post Construction Services, LP et al.* (Super Ct. S.F. City and County, 2011, No. CGC-11-508188)), asserted several claims against Cresson and entities Cresson allegedly controlled, including Loanvest. The claim arose, in part, out of a complex series of transactions involving a loan from Loanvest to Post Construction Services secured by an interest in certain real property in Oakland. Utrecht represented Loanvest in that action and successfully opposed Madow's motion for a preliminary injunction. The requested injunction would have prevented Loanvest from paying out of the proceeds of the sale of Loanvest's interest in the Oakland property "more than $300,000 . . . to discharge 'Loanvest I expenses,' the 'vast majority' of which was paid to Cresson's lawyers in the San Francisco action," and "more than $100,000" to other attorneys "for legal services totally unrelated to South Bay's activities as Loanvest['s] manager." Pursuant to a settlement agreement, as of May 6, 2013, Madow replaced South Bay as the manager of Loanvest. Then, with Madow in control, Loanvest brought this action alleging that in successfully opposing Madow's motion in the prior action, "Utrecht never represented Loanvest['s] interests, instead egregiously breaching the duty of loyalty owed to his

2

purported client" and aided his "true client," Cresson, in "looting" Loanvest to pay Cresson's obligations, including the obligation to pay Utrecht's attorney fees. Utrecht allegedly did so by taking "the position that the outstanding . . . legal bills owed by South Bay (i.e., Cresson) in connection with the San Francisco action *were the legal responsibility of his purported client, Loanvest I*, notwithstanding the fact that South Bay's claims for indemnity from Loanvest I were patently" without merit.

Utrecht moved to dismiss the cause of action under the anti-SLAPP statute. The trial court first determined that the claim is based on an act in furtherance of the right of petition, satisfying the first prong of the anti-SLAPP analysis and, at a later hearing, found that for multiple reasons Loanvest failed to make a prima facie showing of its ability to prevail in the action. In concluding that the malpractice cause of action is based on an act in furtherance of the protected right of petition, the trial court considered the decision of this court in *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton* (2005) 133 Cal.App.4th 658 (*Peregrine*), to be "highly analogous." As in *Peregrine*, in which this court held that claims based in significant part on allegations made by attorneys in judicial filings brought the claims within the scope of the anti-SLAPP statute, the trial court held "[t]he same is true in the present case. While some of the allegations arguably fall outside the categories of protected activity under section 425.16(e), there are numerous allegations of conduct falling squarely within that subsection, as in *Peregrine*. (See, e.g., . . . ['Utrecht took the position [in the San Francisco Action] that the outstanding . . . legal bills owed by South Bay (i.e., Cresson) in connection with the San Francisco Action were the legal responsibility of his purported client, Loanvest'], . . . ['Utrecht successfully took this position in opposition to a motion brought by Madow in the San Francisco Action for injunctive relief to prevent the payment of South Bay legal fees' from proceeds of . . . Loanvest property], . . . ['the foregoing position taken by Utrecht in the San Francisco Action was . . . in furtherance of his own personal objective of obtaining payment for his law firm's outstanding legal bills'], . . . ['In taking a position in the San Francisco Action that had no legal basis and was patently contrary to the best interests of his purported client,' Utrecht aided Cresson in breaching a fiduciary duty to

3

Loanvest.].) As the *Peregrine* court recognized, 'an attorney who is sued for statements made on behalf of a client in a judicial proceeding, or in connection with an issue under review by a court, has standing to bring a motion under section 425.16' even though the statements are allegedly made on behalf of a client rather than the attorney's own behalf. (133 Cal.App.4th at p. 670, fn. 7.)"

Following the trial court's determination that Loanvest failed to establish its ability to prevail, it entered judgment in favor of Utrecht, and Loanvest timely appealed.

**Discussion**

The basic principles applicable to motions to strike under section 425.16 have been restated many times. We quote from this court's opinion in *Peregrine*:

"Section 425.16 provides for the early dismissal of certain unmeritorious claims by means of a special motion to strike. [Citation.] In this regard, the statute states: 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).)

"Consideration of a section 425.16 motion to strike involves a two-step process. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]

"A defendant who files a special motion to strike bears the initial burden of demonstrating that the challenged cause of action arises from protected activity. [Citations.] However, as our Supreme Court has observed, 'the "arising from"

4

requirement is not always easily met. [Citations.]' [Citation.] A cause of action does not 'arise from' protected activity simply because it is filed after protected activity took place. [Citation.] Nor does the fact '[t]hat a cause of action arguably may have been triggered by protected activity' necessarily entail that it arises from such activity. [Citation.] The trial court must instead focus on the substance of the plaintiff's lawsuit in analyzing the first prong of a special motion to strike. [Citations.] In performing this analysis, the Supreme Court has stressed, 'the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech. [Citations.]' [Citation.] In other words, 'the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech. [Citation.]' [Citation.]

" 'In deciding whether the "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).)' [Citation.] On appeal, we independently determine whether this material demonstrates that the cause of action arises from protected activity. [Citation.]" (*Peregrine, supra,* 133 Cal.App.4th at pp. 669-670.)

Rejecting the plaintiffs' contention in *Peregrine* that "the fundamental basis or gravamen of their claims rest[ed] in [the firm's] breaches of duty and not its petitioning activity," this court held "that some of the alleged *actions* constituting these breaches of duty involved petitioning activity the firm undertook on behalf of its client . . . . Although the overarching thrust of [the] plaintiffs' claims may be that [the firm's] conduct helped advance the Ponzi scheme—to [its] detriment—some of the specific conduct complained of involves positions the firm took in court, or in anticipation of litigation with the [Securities and Exchange Commission]. We cannot conclude these allegations of classic petitioning activity are merely incidental or collateral to the plaintiff[s'] claims against [the firm]. The complaint alleges [the plaintiffs] suffered substantial losses due to [the firm's] conduct in delaying resolution of the [Securities and Exchange Commission]

5

investigation and lawsuit and its legal strategies opposing early provisional relief." (*Peregrine, supra,* 133 Cal.App.4th at p. 673.)

In *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1227 (*PrediWave*), the Court of Appeal for the Sixth District pointed out an important distinction. "In determining the applicability of the anti-SLAPP statute, we think a distinction must be drawn between (1) clients' causes of action against attorneys based upon the attorneys' acts on behalf of those clients, (2) clients' causes of action against attorneys based upon statements or conduct solely on behalf of different clients, and (3) nonclients' causes of action against attorneys. In the first class, the alleged speech and petitioning activity was carried out by attorneys on behalf of the plaintiffs in the lawsuits now being attacked as SLAPP's, although the attorneys may have allegedly acted incompetently or in violation of the Professional Rules of Conduct. The causes of action in this first class categorically are not being brought 'primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition . . . .' (§ 425.16, subd. (a).)" In holding the anti-SLAPP statute inapplicable to a cause of action brought by a former client against the client's former attorney, the court stated, "it is unreasonable to interpret this language to include a client's causes of action against the client's own attorney arising from litigation-related activities undertaken for that client." (*Id*. at p. 1228.)[3]

Utrecht seeks to avoid the distinction drawn in *PrediWave,* arguing that this court's "holding" in *Peregrine* is "squarely on point." According to Utrecht, *Peregrine* established that the anti-SLAPP statute applies to a client's causes of action against an

---

[3] The trial court here also considered *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153 to support its conclusion. However, in that case, which held a legal malpractice claim against a client's former attorney to be within the scope of the anti-SLAPP statute, the attorney's alleged misdeed was not the assertion of a claim on behalf of the former client. (*Id*. at pp. 1162, 1171.) The former client alleged that the attorney had breached his obligations to him by reporting to the California Insurance Commissioner, acting as liquidator of an insolvent insurer, that the former client was in the process of auctioning artworks that the attorney falsely represented were owned by the insolvent insurer.

6

attorney for litigation positions that benefit someone other than the client, such as a joint client or the principal of a business entity client. However, the decision in *Peregrine* did not turn on the factual nuance that Utrecht claims. The analysis in *Peregrine* was focused on whether the anti-SLAPP statute applies to claims that are *partially* based on protected activity. (*Peregrine, supra,* 133 Cal.App.4th at pp. 669–675.) The court in *Peregrine* did not expressly consider or discuss the issue of whether the anti-SLAPP statute applies to a client's causes of action against attorneys based upon actions taken on behalf of that client. Language used in an opinion is not authority for a proposition the court did not consider. (*People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 65–66.)

Further, the causes of action alleged in *Peregrine* were not limited to a client's claims against a former attorney. The plaintiffs in *Peregrine* included third parties who had invested in the entities through which an alleged Ponzi scheme was perpetrated. (*Peregrine, supra,* 133 Cal.App.4th at p. 668, fn. 4.) These third-party investors were not the attorneys' former clients but were instead harmed "because [the attorneys'] stalling and stonewalling tactics delayed the progress of the SEC's investigation and lawsuit and enabled the scheme's perpetrators to solicit—and steal—more money from the investors." (*Id.* at p. 671.) Even applying the distinction drawn in *PrediWave,* these claims by nonclients fall within the scope of section 425.16. Consequently, this aspect of *Peregrine* is consistent with cases holding that a claim for injuries suffered by adversaries or other nonclients resulting from an attorney's acts in the course of litigation is based on protected activity and within the scope of the anti-SLAPP statute.[4] (See, e.g., *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735; *Thayer v. Kabateck Brown*

---

[4]The other plaintiff in *Peregrine* was a bankruptcy trustee asserting claims on behalf of entities formerly represented by the attorneys. (*Peregrine, supra,* 133 Cal.App.4th at p. 668, fn. 4.) Although the trustee was not technically the attorneys' former client, he nevertheless stood in the shoes of the former client (see *id.* at p. 680) and would be treated as the former client for purposes of the distinction drawn in *PrediWave*. As noted above, the *Peregrine* court did not consider the issue addressed in *PrediWave* and was not urged to treat the nonclient plaintiffs any differently from the bankruptcy trustee plaintiff, who asserted claims on behalf of former clients.

*Kellner LLP* (2012) 207 Cal.App.4th 141; *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 907–909.)

Where, on the other hand, a legal malpractice action is brought by an attorney's former client, claiming that the attorney breached fiduciary obligations to the client as the result of a conflict of interest or other deficiency in the representation of the client, the action does not threaten to chill the exercise of protected rights and the first prong of the anti-SLAPP analysis is not satisfied. This is made clear by *PrediWave* and by numerous other decisions. (See, e.g., *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1540 ["A malpractice claim focusing on an attorney's incompetent handling of a previous lawsuit does not have the chilling effect on advocacy found in malicious prosecution, libel, and other claims typically covered by the anti-SLAPP statute. In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so. Instead of chilling the petitioning activity, the threat of malpractice encourages the attorney to petition competently and zealously. This is vastly different from a third party suing an attorney for petitioning activity, which clearly could have a chilling effect."]; *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 702 [quoting an authoritative text: " 'California courts have held that when a claim [by a client against a lawyer] is based on a breach of the fiduciary duty of loyalty or negligence, it does not concern a right of petition or free speech, though those activities arose from the filing, prosecution of and statements made in the course of the client's lawsuit. The reason is that the lawsuit concerns a breach of duty that does not depend on the exercise of a constitutional right.' "]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 632 [rejecting attorney's "attempt to turn garden-variety attorney malpractice into a constitutional right"].)

The claim in the present case falls squarely within this latter category. Loanvest is not a third party allegedly harmed by Utrecht's representation of another client, but Utrecht's former client that allegedly was harmed as the result of his "egregiously breaching the duty of loyalty" that was owed to Loanvest. The fact that the complaint

8

refers to Cresson as Utrecht's "true client" and Loanvest as his "purported client" does not alter the admitted fact that Utrecht was the attorney for Loanvest and Loanvest is claiming that Utrecht breached its duty of loyalty by taking steps that were not in its interests but in the interests of Cresson and his other entities. The fact that the complaint "focus[es] specifically on particular statements or positions taken in connection with matters under review by a court," as the trial court noted, does not alter the fact that the claim is not for injuries suffered by a third party caused by the attorney's advocacy but is based on the alleged breach of loyalty owed to Loanvest. (See, e.g., *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1392 [anti-SLAPP statute does not apply to malpractice claim against attorney where "it was the breach of the duty of loyalty owed to the clients that gave rise to liability, not protected speech or petitioning activity"]; *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 729, 733 [although legal malpractice action had "as a major focus" the attorney's actions in representing former client, anti-SLAPP statute did not apply because "principal thrust of the conduct underlying [the] causes of action is . . . [attorney's] undertaking to represent a party with interests adverse to plaintiffs, in violation of the duty of loyalty he assertedly owed them in connection with the [prior] litigation"]; *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617; *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179.)

Since Loanvest's claim is not a challenge to the exercise of protected activity, the first prong of the anti-SLAPP analysis is not met. Therefore, there is no occasion to consider the merits of the claim. (*Freeman v. Schack, supra,* 154 Cal.App.4th at p. 733 ["merits based arguments have no place in our threshold analysis of whether plaintiffs' causes of action arise from protected activity"].) The many reasons for which the trial court concluded that the claim lacks merit must await consideration on a motion for summary judgment or other appropriate proceedings.

## Disposition

The judgment is reversed and the matter is remanded to the trial court for further proceedings. The parties shall bear their own costs on appeal.

_____

Pollak, J.


We concur:


_____

McGuiness, P. J.


_____

Jenkins, J.


A141564


10

Trial Court:                                Alameda County Superior Court

Trial Judge:                               Hon. Robert B. Freedman

Counsel for Plaintiff and Appellant:      James S. Madow

Counsel for Defendant and Respondent:    UTRETCHT & LEVIN, LLP
Ronal D. Schivo
Patrick J. Connolly

A141564