Filed 5/19/20; Certified for Publication 6/11/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMY WITTENBERG,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL BORNSTEIN et al.,<br><br>    Defendants and Appellants. | A154750<br><br>(Alameda County Super. Ct.<br>No. RG17878949) |

    Amy Wittenberg and Daniel Bornstein (Daniel)[1] are the co-owners of Hertzel Enterprises LLC (Hertzel).  Yosef Peretz is an attorney who formerly represented Hertzel and now represents Daniel.  Wittenberg filed a lawsuit asserting various causes of action, both individually and derivatively on behalf of Hertzel, against several defendants including Daniel and Peretz.  Wittenberg alleged that Peretz breached his fiduciary duties of loyalty, care, and confidentiality by (1) representing clients with interests adverse to those of Hertzel; (2) using Hertzel's confidential business information in his representation of clients with adverse interests; and (3) conspiring with Daniel and others to dismiss with prejudice a cross-complaint that Hertzel had previously filed against Daniel.

---

[1]    For ease of identifying the Bornstein parties, we will refer to them by their first names.  No disrespect is intended.

Peretz filed a special motion to strike under the anti-SLAPP law (Code Civ. Proc.,[2] § 425.16 et seq.), arguing the causes of action against him arose from protected litigation activity and lacked minimal merit.  As relevant here, the trial court declined to strike the fourth and eighteenth causes of action for breach of fiduciary duty and conspiracy, finding they arose not out of Peretz's litigation conduct but his alleged breaches of his professional obligations.

We conclude that Peretz carried his burden to show the two causes of action arise, in part, from protected activity, and that the burden therefore shifted to Wittenberg to show minimal merit on her claims based on the allegation of protected activity, which she failed to do.  Accordingly, we affirm in part and reverse in part the trial court's order on the anti-SLAPP motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Wittenberg and Daniel are the two owners and managing members of Hertzel, a limited liability company in the business of real estate investment.

In December 2012, Daniel retained Peretz to negotiate the return of an escrow deposit for Hertzel's purchase of property located at 5327 College Avenue in Oakland (the "College Avenue property") after Hertzel cancelled the deal.  The dispute was resolved by February 2013 when Hertzel recouped most of its deposit.

In September 2016, Daniel initiated proceedings to dissolve Bornstein & Bornstein (B&B), a law partnership formed in 1993 by Daniel and Jonathan Bornstein (Jonathan), who is Daniel's brother and Wittenberg's ex-husband.[3]  The B&B dissolution proceeding (Alameda County Superior Court

---

[2]     All further statutory references are to the Code of Civil Procedure unless stated otherwise.

[3]     The B&B dissolution complaint and other court records filed in the proceedings below were the subject of requests for judicial notice filed by both

case no. RG16830541; hereafter, the "541 action") led to a slew of related claims and cross-actions, including Wittenberg's complaint in the separate action here (Alameda Superior Court case no. RG17878949; hereafter, the "949 action"). We briefly discuss the relevant pleadings in the 541 and 949 actions below.

In late September 2016, Jonathan filed a cross-complaint in the 541 action against Daniel and others alleging that Daniel improperly used his side real estate businesses including Hertzel, Legal One Realty aka Bay Property Group (Legal One or BPG), and 482 W. MacArthur LLC (482 W. MacArthur) to divert money, resources, and assets away from B&B.

Also in late September 2016, Wittenberg authorized attorney Susan Breed to file a cross-complaint for Hertzel in the 541 action, alleging that Daniel, Legal One/BPG, and a BPG employee committed misconduct in their management of several properties owned by Hertzel. Breed was eventually succeeded as Hertzel's counsel by Daniel Cravens. In March 2017, a Judicial Council form request for dismissal was filed seeking the dismissal of Hertzel's cross-complaint with prejudice. Although the trial court initially entered the dismissal with prejudice, it later granted a motion by Wittenberg, on behalf of herself and Hertzel, to deem that the dismissal was without prejudice.

Meanwhile, Daniel filed a cross-complaint and subsequently a first amended cross-complaint in the 541 action against Jonathan and Wittenberg for involuntary dissolution and accounting of Hertzel. Daniel also asserted various tort and statutory claims against Jonathan.

In October 2017, Jonathan and Wittenberg initiated the instant 949 action against Daniel, his wife Renuka Bornstein (Renuka), and

---

parties on appeal. We deferred consideration of these requests pending consideration of the appeal on its merits. We now grant them. (Evid. Code, § 452, subd. (d).)

3

482 W. MacArthur. Their complaint named Hertzel as a nominal defendant and asserted multiple causes of action derivatively on Hertzel's behalf for breaches of real property management and brokerage agreements and related torts. In January 2018, Wittenberg[4] filed a first amended complaint (FAC), which is the pleading at issue in this appeal. The FAC added new allegations, new causes of action, and new defendants, including attorney Peretz.

As relevant here, the FAC alleges that Daniel cancelled Hertzel's purchase of the College Avenue property as part of a plan to use Hertzel's assets to purchase property located at 482 West MacArthur Boulevard in Oakland (the West MacArthur property) for himself and his wife. The FAC further alleges that Peretz participated in a conspiracy with Daniel and others and breached his duty as an attorney to Hertzel. After the College Avenue deal was cancelled, Daniel allegedly "converted $250,000 of funds from Hertzel's bank account," used the funds to purchase the West MacArthur property in Renuka's name, and placed title to that property in a company called "482 W. MacArthur," which was solely owned and operated by Renuka. According to the FAC, these transactions operated to defraud Hertzel "in violation of both [Daniel's] fiduciary duty to disclose the entire terms of the transaction to Hertzel and Amy Wittenberg." All of the money used to purchase and renovate the West MacArthur property allegedly came from Hertzel, and all revenue generated by that property was taken by Daniel, Renuka, and Legal One and never returned to Hertzel.

The FAC asserts 20 causes of action, individually and derivatively on behalf of Hertzel, 11 of which are brought against Peretz. These are the fourth cause of action for breach of fiduciary duty, fifth cause of action for

---

[4] The FAC no longer named Jonathan as a plaintiff.

4

negligent handling of legal matter, eighth cause of action for negligence per se, ninth cause of action for fraud and deceit by misrepresentation, tenth cause of action for fraud and deceit by concealment, eleventh cause of action for fraud and deceit by nondisclosure of superior knowledge, fifteenth cause of action for conversion, sixteenth cause of action for common count, seventeenth cause of action for aiding and abetting, eighteenth cause of action for conspiracy, and twentieth cause of action for constructive trust.[5]

The specific allegations against Peretz are that he acted negligently and in breach of his fiduciary duties of loyalty, care, and confidentiality by (1) representing clients with conflicting interests without obtaining a written conflict waiver from Hertzel or Wittenberg; (2) utilizing Hertzel's confidential business information to prosecute Daniel's dissolution and accounting claims against Hertzel and to defend Daniel and Renuka against Hertzel's claims; and (3) "conspiring with Daniel Bornstein and Daniel Cravens to prepare and file a dismissal with prejudice" of Hertzel's cross-complaint without the informed written consent of the client, all of which allegedly caused harm to both Wittenberg and Hertzel.

### *Peretz's Special Motion to Strike*

Peretz filed an anti-SLAPP motion challenging the causes of action against him in Wittenberg's FAC. Peretz argued that the challenged causes of action arose from protected petitioning activity because they involved his litigation conduct (i.e., representing Daniel and related parties, preparing and filing the request for dismissal of Hertzel's cross-complaint), and that Wittenberg could not show a likelihood of prevailing on her claims. In

---

[5] Only the fourth, fifth, seventeenth, and eighteenth causes of action mention Peretz by name. The eighth, ninth, tenth, eleventh, fifteenth, sixteenth, and twentieth causes of action contain no specific allegations about Peretz but are asserted against "all defendants."

support, Peretz submitted declarations from himself and Daniel stating that Peretz obtained no confidential business information of Hertzel during his brief representation of Hertzel in 2012 and 2013; that Wittenberg was never Peretz's client; and that there was no evidence of a conspiracy to dismiss Hertzel's cross-complaint. According to Peretz, Wittenberg executed a "management resolution" agreeing to dismissal of the Hertzel cross-complaint in exchange for a $50,000 distribution from Hertzel. Peretz also averred it was always his understanding that the parties contemplated a dismissal of the Hertzel cross-complaint with prejudice.

In opposition, Wittenberg argued the challenged causes of action did not arise from protected activity because the acts giving rise to Peretz's liability were his acceptance of employment by Daniel (a client with adverse interests to his former client, Hertzel), and his use of Hertzel's confidential information against Hertzel in representing Daniel. Wittenberg further argued that, in any event, she demonstrated a probability of prevailing on her claims. On this score, Wittenberg submitted her declaration and the declaration of her former attorney, Ari Lauer, in which they represented that Wittenberg never authorized a dismissal of Hertzel's cross-complaint with prejudice and that she did not agree to a settlement of any claims in exchange for the $50,000 distribution.

The trial court granted the motion in part and denied it in part. As relevant here, the court declined to strike the fourth and eighteenth causes of action. Specifically, the court determined that the fourth cause of action for breach of fiduciary duty fell into an exception to the anti-SLAPP law for claims by a client against his or her attorney for acts on that client's behalf. With regard to the eighteenth cause of action, the trial court concluded it failed to specify the manner of Peretz's participation in the alleged conspiracy

6

and was therefore "not clear whether it is based on Peretz's litigation conduct or something else possibly falling outside section 425.16.[6]

Peretz appeals these two rulings. (§ 425.16, subd. (i).)

**DISCUSSION**

Section 425.16 authorizes a special motion to strike claims arising from any act "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance by allowing defendants to request "early judicial screening" of claims targeting free speech or petitioning activities. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 887; see § 425.16, subd. (a).)

Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16, and if the defendant makes this showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) On appeal, we review the trial court's ruling on the anti-SLAPP motion de novo. (*Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 339.)

**A. *First Step—Liability Arising from Protected Activity***

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State*

---

[6]    The court additionally granted the anti-SLAPP motion and struck the fifth and seventeenth causes of action. Although it declined to strike the eighth, ninth, tenth, eleventh, fifteenth, sixteenth and twentieth causes of action, it ultimately sustained Peretz's demurrer to these causes of action without leave to amend. This appeal is limited to the court's anti-SLAPP rulings on Wittenberg's fourth and eighteenth causes of action.

7

*University* (2017) 2 Cal.5th 1057, 1062–1063 (*Park*).) "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063.)

Here, the acts which supply the requisite elements of the fourth and eighteenth causes of action[7] are as follows: Peretz accepted representation of Daniel even though Daniel had interests adverse to Hertzel in connection with subject matter related to Peretz's earlier representation of Hertzel (the College Avenue deal); Peretz used Hertzel's confidential business information to prosecute Daniel's dissolution and accounting claims against Hertzel and to defend Daniel and related parties against Hertzel's derivative claims in both the 541 and 949 actions; and Peretz conspired with Daniel and attorney Cravens in preparing and filing the dismissal of the Hertzel cross-complaint in the 541 action with prejudice.

"Filing a lawsuit is an exercise of one's constitutional right of petition, and statements made in connection with or in preparation of litigation are subject to section 425.16." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) Thus, a cause of action arising from acts committed by attorneys in representing clients in litigation may appropriately be the subject of an anti-SLAPP motion. (*PrediWave v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1221 (*PrediWave*).) However, a client's action against

_____

[7] The elements of a cause of action for breach of fiduciary duty/duty of loyalty are: (1) the existence of a relationship giving rise to a fiduciary duty/duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 410.) The elements of civil conspiracy are: (1) the formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct. (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581.)

his or her attorney, whether it is pleaded as a claim for malpractice, breach of fiduciary duty, or any other theory of recovery, is not subject to the anti-SLAPP statute "merely because some of the allegations refer to the attorney's actions in court." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1275.) When the allegations referring to litigation activity " ' "are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." ' " (*Id.* at p. 1273.)

Several pertinent cases illustrate this distinction. In *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179 (*Benasra*), the court held that the plaintiffs' causes of action against their former attorneys for breach of the duty of loyalty in subsequently representing a rival in arbitration arose not from protected conduct, but from alleged violations of the State Bar Rules of Professional Conduct prohibiting an attorney from accepting employment adverse to a former client where, by reason of the prior representation, the member has obtained confidential information material to the employment. "[O]nce the attorney accepts a representation in which confidences disclosed by a former client may benefit the new client due to the relationship between the new matter and the old, he or she has breached a duty of loyalty. The breach of fiduciary duty lawsuit may follow litigation pursued against the former client, but does not arise from it." (*Id.* at p. 1189.)

Similarly, in *Freeman v. Schack* (2007) 154 Cal.App.4th 719 (*Freeman*), the plaintiffs sued their former attorney for breach of contract, breach of fiduciary duty, and negligence, alleging he entered into a contract by which he assumed attorney-client duties to plaintiffs but abandoned them to represent adverse interests in the same and different litigation. (*Id.* at

9

p. 722.) Reversing the order granting the attorney's anti-SLAPP motion, the appellate court held that the principal thrust of the conduct underlying the plaintiffs' causes of action was not the attorney's filing or settlement of litigation, but "his undertaking to represent a party with interests adverse to plaintiffs, in violation of the duty of loyalty he assertedly owed to them." (*Id.* at p. 732.) The attorney's litigation-related activities, the court held, were merely incidental to his negligence and breach of fiduciary duty. (*Ibid.*)

Citing *Benasra* and *Freeman* approvingly, the appellate court in *PrediWave* outlined three classes of cases against attorneys relating to the SLAPP law: (1) clients' causes of action against attorneys based upon the attorney's acts on behalf of those clients; (2) clients' causes of action against attorneys based upon statements or conduct solely on behalf of different clients; and (3) non-clients' causes of action against attorneys. (*PrediWave*, *supra*, 179 Cal.App.4th at p. 1227.) The court held that only the first category of cases may be outside the ambit of the anti-SLAPP law. (*Ibid.*)

Finally, in *Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496 (*Loanvest*), a corporate entity sued its former attorney for malpractice, alleging he had breached his duty of loyalty to the company by taking legal positions in a prior litigation that were intended to benefit the company's previous manager, who controlled the company. Relying on *PrediWave* and other decisions in accord, this court held that "[w]here . . . a legal malpractice action is brought by an attorney's former client, claiming the attorney breached fiduciary obligations to the client as the result of a conflict of interest or other deficiency in the representation of the client, the action does not threaten to chill the exercise of protected rights and the first prong of the anti-SLAPP analysis is not satisfied." (*Id.* at p. 504.)

10

As in *Benasra, Freeman*, and *Loanvest*, Peretz's alleged acts of representing clients with interests adverse to his former client and using Hertzel's confidential information in the new representation do not constitute protected activity under the anti-SLAPP law. Such causes of action arise from Peretz's alleged breaches of his fiduciary and professional obligations, not from the litigation conduct, which is merely incidental to the unprotected conduct. There is no chilling effect on advocacy in such claims; rather, the threat of liability encourages the attorney to act competently and loyally. (*PrediWave*, *supra*, 179 Cal.App.4th at p. 1222; *Loanvest*, *supra*, 235 Cal.App.4th at p. 504.)

Peretz contends, nonetheless, that the derivative claims are illusory and should be disregarded because Wittenberg fails to distinguish between her individual injury and the injury to Hertzel, while her individual claims fall into the third *PrediWave* category (nonclient claims against an attorney) because she does not allege an attorney-client relationship with Peretz. But whether Wittenberg sufficiently alleges a derivative claim and an attorney-client relationship goes to the claims' merits, which is an inquiry reserved for the second step of the anti-SLAPP analysis. (*Sprengel v. Zbylut* (2015) 241 Cal.App.4th 140, 155–157.) At the first step, we merely identify the acts supplying the elements of the challenged causes of action (*Park*, *supra*, 2 Cal.5th at p. 1063), and to that end, it is sufficient that Wittenberg alleges she was harmed by Peretz's breaches of his professional obligations of loyalty and confidentiality.

We reach a different conclusion for the particular allegation that Peretz was involved in the preparation and filing of the request for dismissal of the Hertzel cross-complaint. (See *Baral*, *supra*, 1 Cal.5th at pp. 393–394 [anti-SLAPP motion can be used like conventional motion to strike to challenge

11

claims of protected conduct mixed with assertions of unprotected conduct in a cause of action].) Wittenberg argues that this conduct falls within the first *PrediWave* category (and is therefore outside the ambit of the anti-SLAPP law) because Peretz is being sued for work he performed for his former client, Hertzel. Peretz argues to the contrary that it falls under the second *PrediWave* category because the alleged conduct was taken on behalf of a different client, Daniel. In our view, the conduct fails to fall squarely within either category. Peretz represented Hertzel only with reference to recouping the College Avenue escrow deposit and no longer represented Hertzel at the time he allegedly conspired with Daniel and Cravens to effectuate the dismissal with prejudice of Hertzel's cross-complaint. Yet we acknowledge Peretz was not acting "solely" on behalf of a different client (*PrediWave*, *supra*, 179 Cal.App.4th at p. 1227), since the dismissal directly implicated the rights and interests of his former client.

*PrediWave* categories aside, we conclude the act underlying Peretz's liability for this particular allegation is protected litigation conduct. Although the FAC does not specifically allege the acts that Peretz performed in connection with the dismissal of the Hertzel cross-complaint, the parties' evidentiary submissions provide more clarity. (See *Wilson*, *supra*, 7 Cal.5th at p. 887 [courts must look beyond pleadings to parties' evidentiary submissions on first anti-SLAPP step]; *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1286 [citing declarations to understand whether vague pleading described protected activity].) Wittenberg states in her declaration that she and Lauer discussed "Peretz's proposal to dismiss the cross-complaint against Daniel Bornstein" during settlement talks. The dismissal of the Hertzel cross-complaint was one of the subjects of the management resolution "prepared by" Peretz, and Wittenberg states that after she

executed the resolution, Peretz "filed the dismissal with prejudice with the court via facsimile."[8]  It appears, then, that the acts upon which Peretz's liability is based are his statements and writings made in connection with the dismissal of the Hertzel's cross-complaint, which is protected conduct under the anti-SLAPP law.  (§ 425.16, subd. (e)(2) [statements and writings in connection with judicial proceedings].)

Because the fourth and eighteenth causes of action seek relief based, in part, on these specific allegations of Peretz's litigation activity, the burden shifted to Wittenberg to demonstrate the minimal merit of the challenged causes of action to the extent they are based on protected litigation conduct. (*Baral*, *supra*, 1 Cal.5th at pp. 393–394, 396.)

## B. *Second Step—Probability of Prevailing*

The second step of the anti-SLAPP motion is a " 'summary-judgment-like procedure' " (*Baral*, *supra*, 1 Cal.5th at p. 394), requiring the plaintiff to demonstrate that the complaint is both legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the plaintiff's evidence is credited.  (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)  In conducting this inquiry as to the allegations of Peretz's litigation conduct, we do not weigh evidence or resolve conflicting factual claims, and we accept the plaintiff's evidence as true and evaluate the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  (*Baral*, at pp. 384–385.)  "[C]laims with the requisite minimal merit may proceed."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94.)

---

[8]    Although the request for dismissal form indicates on its face that it was executed by Cravens as Hertzel's counsel, a telephone number appearing at the top of the form matches the number held out by Peretz in his court filings.  Peretz does not dispute his alleged involvement in the preparation and filing of the dismissal request form.

13

Peretz argues that Wittenberg's individual and derivative claims for breach of fiduciary duty lack minimal merit because Hertzel ultimately suffered no harm from the dismissal of its cross-complaint, and because Wittenberg failed to allege and substantiate an attorney-client relationship with Peretz. We agree.

First, as Peretz observes, the trial court's order setting aside the dismissal with prejudice had the effect of rendering moot any harm to Hertzel in being temporarily deprived of its right to refile its cross-complaint.

Second, although Wittenberg alleges additional individual damages in the form of legal fees she personally incurred to set aside the dismissal, she has not sufficiently alleged or substantiated an attorney-client relationship (or other fiduciary relationship) between her and Peretz to support her individual claim for breach of fiduciary duty. Peretz establishes in his declaration that he never represented Wittenberg as her attorney in any matter. Wittenberg does not allege or contend otherwise.

True, Peretz briefly represented Hertzel in 2012 and 2013, and an implied attorney-client relationship may be formed between the attorney for a corporate entity and its individual members where, as here, the corporate entity is owned by two 50 percent members. (*Sprengel v. Zbylut* (2019) 40 Cal.App.5th 1028, 1043, 1046.) However, "the key inquiry is whether 'the totality of the circumstances' implies an agreement that a corporate attorney will not act adversely to the individual shareholder's interests with respect to the issue in dispute." (*Id.* at p. 1047.)

The evidence in this case demonstrates that Wittenberg had no reason to believe Peretz was acting to protect her interests with respect to the proposed dismissal of the Hertzel cross-complaint. As Wittenberg acknowledges, Peretz discussed the proposed dismissal with Wittenberg's

14

own attorney, Lauer. There is no dispute that Peretz was representing Daniel in defending *against* the Hertzel cross-complaint. Likewise, the evidence establishes that Hertzel's counsel at the time was Breed, who was eventually succeeded by Cravens. At all relevant times, Wittenberg was represented by her own counsel and was an adversary in litigation with Peretz's client, Daniel. Thus, Wittenberg fails to raise a triable issue as to the existence of an attorney-client or other fiduciary relationship between her and Peretz.

Finally, we conclude Wittenberg fails to show minimal merit on her eighteenth cause of action alleging a conspiracy involving dismissal of the cross-complaint. "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511.) Plainly stated, Wittenberg fails to make a prima facie showing of facts that Peretz acted pursuant to a common plan or design with Daniel and Cravens to obtain the unauthorized dismissal of the Hertzel cross-complaint with prejudice.

For all of these reasons, we conclude the anti-SLAPP motion should have been granted, in part, as to the allegation that Peretz participated in the preparation and filing of the dismissal with prejudice of the Hertzel cross-complaint against Peretz.

## DISPOSITION

The order denying in part and granting in part the anti-SLAPP motion is reversed to the extent it denied the motion to strike as to the allegation that Peretz participated in the preparation and filing of the dismissal with prejudice of the Hertzel cross-complaint. The matter is remanded with

15

directions to grant the special motion to strike the following sentences from Wittenberg's first amended complaint and the claims arising from the stricken sentences: (1) the carryover sentence in paragraph 67, beginning at line 27 on page 25 and ending on line 3 on page 26; and (2) the last sentence in paragraph 69 on page 26, beginning at line 19 and ending on line 22. In all other respects, the order is affirmed. The parties shall bear their own costs on appeal.

_____
Fujisaki, J.

WE CONCUR:


_____
Siggins, P. J.


_____
Jackson, J.


A154750

Filed 6/11/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMY WITTENBERG,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL BORNSTEIN et al.,<br><br>    Defendants and Appellants. | A154750<br><br>(Alameda County Superior<br> Court No. RG17878949) |

BY THE COURT:

The opinion in the above-entitled matter, filed on May 19, 2020, was not certified for publication in the Official Reports.  For good cause, the request for publication is granted.

Pursuant to California Rules of Court, rules 8.1120 and 8.1105(c)(2), the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.

Dated: _____                                _____Acting P.J.

1

Trial Court:          Alameda County Superior Court

Trial Judge:          Hon. Paul D. Herbert

Counsel:              Lonnie Finkel, Douglas A. Applegate, for Plaintiff and
                      Respondent.


                      Yosef Peretz, Daniel J. Cravens for Defendant and
                      Appellant.