Filed 6/6/22; Certified for Publication 6/23/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RAY B. BOWEN, JR., | 2d Civil No. B312831 |
|   Cross-complainant and Appellant, | (Super. Ct. No. 56-2020-00547900-CU-BC-VTA) (Ventura County) |
| v. | |
| VICTOR LIN et al., | |
|   Cross-defendants and Appellants. | |

      Victor and Yvonne[1] Lin and their adult children Calvin and Gail moved to strike a cross-complaint filed by Ray B. Bowen, Jr., as a strategic lawsuit against public participation (SLAPP). The trial court granted Gail's motion to strike the causes of action against her, but denied the other motions. In their appeal, Victor, Yvonne, and Calvin contend the court should have stricken the causes against them because they arose from acts in furtherance of the right to petition and because Bowen

_____

[1] We use the Lin family's first names for clarity.

failed to show a probability of prevailing on the merits of those causes.  In his cross-appeal, Bowen contends the court should not have stricken his causes against Gail because they did not arise from acts protected by the anti-SLAPP statute and/or because he showed a probability of prevailing.  Bowen also contends the court erred when it declined to rule on his evidentiary objections.  We affirm the portion of the order granting Gail's motion, vacate the portion denying Victor, Yvonne, and Calvin's motions, and remand for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

Victor and Calvin practiced medicine out of an Oxnard office owned by Victor and Yvonne.  The office sustained $25,000 in damages when a pipe in an adjacent office started leaking.  The Lins hired Bowen as their attorney to demand that the owner of the adjacent office, Cynthia Lau, pay to rectify the water damage.

After Lau rejected the settlement demands, Bowen recommended that the Lins sue.  Victor and Yvonne agreed, but Calvin did not.  Bowen nevertheless named him as a plaintiff in the lawsuit (the Lau case).  He estimated that prosecuting the case would cost between $25,000 and $50,000.

Over the next three years, the Lins paid Bowen nearly $68,000.  Frustrated with ever-mounting costs, Victor told Bowen to cease all nonessential work on the Lau case while Gail, a licensed attorney, tried to reach a settlement with Lau's estate.[2]  Bowen replied that he would not cease work and would not grant Gail permission to settle the case as long as he was counsel of record.  Gail then formally substituted in and settled the case.

---

[2] Lau passed away in 2019.

Bowen sued Victor and Yvonne for breach of contract and quantum meruit, seeking to recover the unpaid balance of his fees. Victor and Yvonne cross-complained, alleging that Bowen breached his fiduciary duties, committed malpractice, and failed to execute a written fee agreement. Calvin joined the lawsuit as a cross-complainant.

Bowen then filed his own cross-complaint. His first cause of action asserted that Calvin breached his oral contract with Bowen when he stopped cooperating in the Lau case and fired Bowen as his attorney. The second, third, and fourth causes—for intentional interference with contractual relations, intentional interference with prospective economic relations, and negligent interference with prospective economic relations—asserted that Calvin and Gail encouraged their parents to stop cooperating with Bowen, fire him as their attorney, withhold payments due, and work with Gail to achieve a settlement. Bowen's fifth cause asserted that Victor, Yvonne, and Calvin committed fraud when they induced him to provide legal services in the Lau case—all while providing minimal payments—knowing they would have Gail settle the case on the eve of trial. The sixth cause asserted that all four members of the Lin family conspired to defraud Bowen by encouraging him to work on the Lau case while knowing they would settle it themselves after substituting him out.

The Lins filed anti-SLAPP motions to strike relevant portions of Bowen's cross-complaint. The trial court granted Gail's motion, concluding that the actions she took on behalf of her parents and brother were protected by the anti-SLAPP statute and that the litigation privilege prevented Bowen from showing a probability of prevailing on the causes of action

against her.  The court denied the motions filed by Victor, Yvonne, and Calvin, concluding that the causes against them were "probably not" based on communications made "'in connection with an issue under consideration or review by a judicial body.'"  It did not decide whether Bowen established a probability of prevailing on those causes.  It also declined to rule on the parties' evidentiary objections.

## DISCUSSION

### *The anti-SLAPP statute*

Code of Civil Procedure[3] section 425.16 sets forth "a two-step process for determining whether an action is a SLAPP." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).)  First, the defendant must show that "that the challenged cause of action is one arising from protected activity . . . by demonstrating that the act underlying the . . . cause fits [within] one of the categories spelled out in section 425.16, subdivision (e).'" (*Ibid*.) If the defendant makes that showing, the burden shifts to the plaintiff to "demonstrate[] a probability of prevailing on" the merits of their cause.  (*Ibid*.)  "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute . . . is . . . subject to being stricken."  (*Id*. at p. 89.)

We independently review a trial court's decision to grant or deny an anti-SLAPP motion.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326 (*Flatley*).)  When undertaking that review, "'[w]e consider "the pleadings[] and supporting and opposing affidavits upon which the liability or defense is based"'" (*id*. at p. 326), but "do[] not weigh evidence or resolve conflicting factual claims" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384).  Instead, we

---

[3] Unlabeled statutory references are to the Code of Civil Procedure.

limit our inquiry "to whether the plaintiff has stated a legally sufficient [cause of action] and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Id.* at pp. 384-385.) We "accept[] the plaintiff's evidence as true, and evaluate[] the defendant's showing only to determine if it defeats the plaintiff's [cause] as a matter of law." (*Id.* at p. 385.) Causes of action "'with the requisite minimal merit may proceed.' [Citation.]" (*Ibid.*, alterations omitted.)

*Bowen's causes of action against Victor, Yvonne, and Calvin*

### 1. Protected activity

Victor, Yvonne, and Calvin first contend the trial court erred when it concluded that the causes of action against them did not arise from protected activity. We agree.

In his first cause of action, Bowen alleges that he entered into an oral contract to represent Calvin in the Lau case. Pursuant to the contract, "Calvin agreed to actively cooperate with Bowen . . . to achieve a successful result [and] . . . obtain[] an award for damages against the [Lau defendants]." Calvin breached that contract "by failing and refusing to actively cooperate with Bowen" and then "terminating [their] attorney-client relationship."

Few acts are more squarely protected by the anti-SLAPP statute. Among the acts protected by the statute are "statement[s] or writing[s] made before a . . . judicial proceeding" (§ 425.16, subd. (e)(1)) and "written or oral statement[s] or writing[s] made in connection with an issue under consideration or review by a . . . judicial body" (*id.*, subd. (e)(2)). The first basis for Bowen's breach of contract cause of action—the extent of Calvin's communications with Bowen about the Lau case—fits within these categories: The "filing, funding, and prosecution of a

civil action" are protected acts. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) And but for the decision to file, fund, and prosecute the Lau case, Bowen's breach of contract cause of action would have no basis. (*Moss Bros. Toy, Inc. v. Ruiz* (2018) 27 Cal.App.5th 424, 435-436; see also *Navellier, supra*, 29 Cal.4th at p. 90.)

The anti-SLAPP statute also protects "conduct in furtherance of the exercise of the constitutional right of petition." (§ 425.16, subd. (e)(4).) Decisions about hiring and firing one's attorney—the second basis for Bowen's breach of contract cause of action—are within this category. (See, e.g., *Gage v. Atwater* (1902) 136 Cal. 170, 172 [noting that a "client has the absolute right to change [their] attorney at any stage"]; *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 491 (*Taheri*) ["the 'important right to counsel of one's choice' is . . . well established"].) The trial court thus erred when it concluded that Bowen's breach of contract cause of action did not arise from protected activity.

We reach the same conclusion with respect to the interference causes of action. Bowen bases these causes on Calvin encouraging his parents to stop cooperating with Bowen in the Lau case, sever their attorney-client relationship with him, and instead have Gail negotiate a settlement. These communications were not tangential to the Lau case, but directly pertained to its resolution. (*Taheri, supra*, 160 Cal.App.4th at p. 489.) As such, they were "'made in connection with an issue under consideration or review by a judicial body.'" (*Ibid.*, alterations omitted; see also *Pech v. Doniger* (2022) 75 Cal.App.5th 443, 462 (*Pech*) [advising clients to terminate attorney's services is protected activity].) Bowen's second, third,

6

and fourth causes of action thus "plainly . . . arose from" protected conduct. (*Taheri*, at p. 489.)

So did the fifth and sixth. Bowen bases these causes of action on the Lins' purported intent that he litigate the Lau case until "just before trial," at which point they would "terminate [his] legal services, refuse to pay . . . the balance owed for fees and costs, [and] have [Gail] settle the [case]." But the communications Victor, Yvonne, and Calvin had with Gail about settling the Lau case were "made in connection with an issue under consideration or review by a . . . judicial body" (§ 425.16, subd. (e)(2)) and were therefore protected by the anti-SLAPP statute (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784). And the parts of those communications the Lins allegedly concealed or withheld to induce Bowen to represent them were similarly protected as corollary to those communications. (*Ojjeh v. Brown* (2019) 43 Cal.App.5th 1027, 1044 [anti-SLAPP statute applies to speech defendants "*should have engaged* in"].) The trial court thus erred in concluding that the fraud causes of action against Victor, Yvonne, and Calvin did not arise from protected activity.

Relying on *Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496 (*Loanvest*), Bowen counters that the trial court correctly determined that his causes of action against Victor, Yvonne, and Calvin did not arise from protected activity because they sued him for malpractice in their cross-complaint. We disagree.

In *Loanvest*, a law firm successfully opposed a motion for a preliminary injunction against its corporate client. (*Loanvest*, *supra*, 235 Cal.App.4th at pp. 499-500.) The corporation then reorganized and sued the law firm for

7

malpractice. (*Id*. at p. 500.) The law firm moved to strike the cause of action pursuant to the anti-SLAPP statute. (*Ibid*.) The trial court granted the firm's motion, concluding that the corporation's malpractice cause arose from protected activity. (*Id*. at pp. 500-501.) Our colleagues in the First District disagreed: "Where . . . a legal malpractice action is brought by an attorney's former client, . . . 'the client is not suing because the attorney petitioned on [their] behalf, but because the attorney did not competently represent the client's interests while doing so.'" (*Id*. at p. 504.) "'Instead of chilling [protected] petitioning activity, the threat of malpractice encourages the attorney to petition competently and zealously.'" (*Ibid*.) This lack of a chilling effect prevents a malpractice cause of action from being struck as a SLAPP. (*Ibid*.)

Here, Bowen did not move to strike the malpractice cause of action from Victor, Yvonne, and Calvin's cross-complaint; Victor, Yvonne, and Calvin moved to strike causes from the cross-complaint Bowen filed in response to their cross-complaint. These anti-SLAPP motions do not challenge Bowen's handling of the Lau case, but instead challenge causes of action that arise from the decisions they made with regard to that handling. This distinction is critical: Unlike a threat of malpractice, an attorney threatening litigation against former clients for decisions they made while the attorney represented them *would* chill the constitutional right of petition by preventing the clients from fully and openly discussing litigation matters among themselves, with that attorney, or with another attorney. (See *Taheri, supra*, 160 Cal.App.4th at 489.) Such acts are at the very heart of the anti-SLAPP statute's protections. (*Ibid*.)

8

## *2. Probability of prevailing*

Victor, Yvonne, and Calvin next contend Bowen failed to show a probability of prevailing on the causes of action against them.  But the trial court did not consider the merits of this contention during the proceedings below.  Nor did it rule on the admissibility of the parties' evidence.  "Under such circumstances, the more prudent course is to remand the matter [for] the trial court to determine in the first instance whether [Bowen] demonstrated a reasonable probability of prevailing on the merits of his causes of action."  (*Hunter v. CBS Broadcasting Inc.* (2013) 221 Cal.App.4th 1510, 1527.)

### *Bowen's causes of action against Gail*

In his cross-appeal, Bowen contends the trial court erred when it concluded that:  (1) his causes of action against Gail did not arise from activity protected by the anti-SLAPP statute, and (2) he did not show a probability of prevailing on the merits of those causes.  We disagree with both contentions.

### *1. Protected activity*

The interference and fraud causes of action against Gail allege that she urged her parents to stop cooperating with Bowen in the Lau case, fire him as their attorney, and have her negotiate a settlement.  The trial court determined that these causes arose from protected conduct based on *Taheri*, *supra*, 160 Cal.App.4th 482.  In that case, as here, a law firm sued an attorney for inducing the firm's clients to end their relationship with it and hire the attorney instead.  (*Id*. at p. 485.)  The attorney argued that his conduct soliciting the clients was protected since it involved communications about a pending case.  (*Id*. at p. 486.)  Our colleagues in Division 8 of this court agreed,

9

and upheld the order granting the attorney's anti-SLAPP motion. (*Id*. at p. 489.)

Bowen's sole challenge to the trial court's reliance on *Taheri* is that the case is no longer good law.  In 2018—10 years after *Taheri* was decided—the State Bar adopted Rule 4.2(a) of the Rules of Professional Conduct (Rule 4.2(a)).  That rule states that, "[i]n representing a client, a lawyer [may] not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." (Asterisks omitted.)  To Bowen, had Rule 4.2(a) been in effect when *Taheri* was decided, the outcome of that case would have been different because violations of the Rules of Professional Conduct, like legal malpractice claims, would have been deemed unworthy of protection by the anti-SLAPP statute.

Bowen is wrong.  Rules of conduct substantively identical to Rule 4.2(a) have been in effect for decades, including when *Taheri* was decided.  (See Rules Prof. Conduct, former Rule 2-100(A); see also *City of San Diego v. Superior Court* (2018) 30 Cal.App.5th 457, 462, fn. 1 ["[t]he substance of former rule 2-100(A) . . . became rule 4.2(a)" in 2018].)  And those rules simply do not apply to situations like the one here.

Rule 4.2(a), like former Rule 2-100(A), applies to an attorney "representing a client."  Its purpose is to prevent an attorney representing one party in a case from communicating with another represented party about the case without the consent of that party's attorney.  (*Mitton v. State Bar of Cal.* (1969) 71 Cal.2d 525, 534.)  Gail, like the attorney in *Taheri*, did not represent any party in the Lau case when she allegedly engaged in the communications underlying Bowen's causes of

10

action against her.  Rule 4.2(a) was thus inapplicable.  (*HTC Corp. v. Technology Properties Ltd.* (N.D.Cal. 2010) 715 F.Supp.2d 968, 972 [lawyer not involved in an action did not violate former Rule 2-100(A) when communicating with party represented in the action].)  Bowen's challenge to the trial court's reliance on *Taheri* accordingly lacks merit.

### 2. *Probability of prevailing*

The trial court determined that the litigation privilege prevented Bowen from showing a probability of prevailing on his causes of action against Gail.  Bowen does not directly challenge that determination, but instead argues that a consideration of the evidence he submitted in support of his cross-complaint shows he is likely to prevail.  We disagree.  Even if Bowen's evidence is considered and credited, the litigation privilege prevents him from prevailing on his causes of action against Gail.

"For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the [litigation] privilege" set forth in Civil Code section 47, subdivision (b).  (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1193.)  The privilege has "an expansive reach" (*id.* at p. 1194) and applies to claims such as interference with contractual relations (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1132), interference with prospective economic relations (*ibid.*), and fraud (*Carden v. Getzoff* (1987) 190 Cal.App.3d 907, 913).  It attaches well before the parties enter the courtroom, covering "'preliminary conversations and interviews' related to contemplated action" and other "'steps taken prior' to judicial proceedings."  (*Rubin*, at p. 1195.)

11

The litigation privilege bars liability for "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) It is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense [the nonmoving party] must overcome to demonstrate a probability of prevailing." (*Flatley*, *supra*, 39 Cal.4th at p. 323.) Whether the privilege shields Gail's actions is a question of law subject to our independent review. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913.) "Any doubt about whether the privilege applies is resolved in favor of applying it." (*Ibid*.)

The litigation privilege applies here. Bowen's causes of action against Gail are all based on the advice she gave her parents and brother regarding the settlement of the Lau case. Such communications meet all four criteria laid out in *Silberg*, *supra*, 50 Cal.3d 205. (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 970-971; see also *Pech*, *supra*, 75 Cal.App.5th at pp. 465-466.) Bowen thus cannot show a probability of prevailing. The trial court correctly granted Gail's anti-SLAPP motion.

*Bowen's evidentiary objections*

Finally, Bowen contends the trial court erred when it refused to rule on his objections to the Lins' declarations. But there was no need to do so because the court did not reach the merits of any of Bowen's causes of action. Because the court must now evaluate the merits of the causes against Victor, Yvonne, and Calvin, it will have the opportunity to consider the admissibility of the evidence in support of or in opposition to

12

those causes.  We express no opinion as to how the court should rule on the objections.

DISPOSITION

The portions of the trial court's May 28, 2021, order denying Victor and Yvonne's anti-SLAPP motion and denying Calvin's anti-SLAPP motion are vacated, and the matter is remanded for the court to determine whether Bowen has demonstrated a probability of prevailing on the causes of action against Victor, Yvonne, and Calvin.  In all other respects, the order is affirmed.  The Lins shall recover their costs on appeal.


TANGEMAN, J.


We concur:


YEGAN, Acting P. J.


PERREN, J.


13

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

Hua Gallai & Gonzalez, Nicholas T. Hua, Giacomo Gallai and Steven C. Gonzalez for Cross-defendants and Appellants.

James A. Howard and Ray B. Bowen, Jr. for Cross-complainant and Appellant.

Filed 6/23/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RAY B. BOWEN, JR.,<br><br>    Cross-complainant and Appellant,<br><br>v.<br><br>VICTOR LIN et al.,<br><br>    Cross-defendants and Appellants. | 2d Civil No. B312831<br>(Super. Ct. No. 56-2020-00547900-CU-BC-VTA)<br>(Ventura County)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |

THE COURT:

    The opinion in the above-entitled matter filed on June 6, 2022, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

    There is no change in judgment.

_____

YEGAN, Acting P. J.        PERREN, J.        TANGEMAN, J.