[Nos. B166653, B167512. Second Dist., Div. Four. Nov. 5, 2004.]

MICHEL BENASRA et al., Plaintiffs and Appellants, v.
MITCHELL SILBERBERG & KNUPP LLP et al., Defendants and
Respondents.

**COUNSEL**

Fagelbaum & Heller, Philip Heller and Jerold Fagelbaum for Plaintiffs and Appellants.

Mitchell Silberberg & Knupp, Thomas P. Lambert, Peter B. Gelblum and David A. Steinberg for Defendants and Respondents Mitchell Silberberg & Knupp, Daniel M. Petrocelli and Robert C. Welsh.

O'Melveny & Myers and James W. Colbert III for Defendants and Respondents Daniel M. Petrocelli and Robert C. Welsh.

**OPINION**

**CURRY, J.—** ▮  In this case, we are called on to decide whether our recent decision in *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624 [7 Cal.Rptr.3d 715], which held that a claim for legal malpractice is not subject to a special motion to strike pursuant to Code of Civil Procedure section 425.16, the so-called anti-SLAPP statute (section 425.16),[1] applies to the situation where the claim is attorney breach of duty of loyalty. We conclude that *Jespersen* applies, and that the motion to strike should not have been granted.

---

[1] "SLAPP" is an acronym for strategic litigation against public participation.

## FACTUAL AND PROCEDURAL BACKGROUND

This is the second time these parties have been before us. In the prior case we were asked to determine whether res judicata foreclosed the claim of appellants Michel Benasra, Denys Goulin, and Pour Le Bebe, Inc. (PLB), for breach of duty of loyalty against respondent Mitchell Silberberg & Knupp (MS&K), who had represented appellants' opponent, Guess, Inc., in an arbitration.[2] The trial court had granted a defense motion for summary judgment based on the claim preclusion aspect of res judicata, because the arbitration panel had denied a motion to disqualify brought by appellants, thereby impliedly ruling that no breach of duty of loyalty occurred. We reversed.

This appeal is also from a ruling in favor of respondents. After the matter was remanded to the trial court, appellants were granted leave to amend the complaint to add two former MS&K partners, respondents Daniel Petrocelli and Robert Welsh, who had left the firm while the appeal was pending.

Respondents filed a special motion to strike pursuant to section 425.16. Respondents argued that their representation of appellants' rival in an arbitration came under section 425.16 in that it was an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " (§ 425.16, subd. (e).)

On the merits of the motion to strike, respondents presented evidence that they did not represent appellants at the time of the Guess arbitration, and that there was no substantial relationship between the matters in which they formerly represented appellants and the Guess arbitration. Respondents further argued that appellants "must . . . prove that [MS&K] actually obtained and improperly disclosed confidential information and that those disclosures actually caused them damage by changing the outcome of the Guess Arbitration." Petrocelli and Welsh argued separately that the claims against them were time barred when measured against the November 2002 filing of the amended complaint.[3]

Appellants opposed the motion to strike, presenting evidence through the declaration of Benasra indicating that MS&K had begun representation of

---

[2] We explained in the prior opinion and order: "[PLB] was a licensee of designer [Guess], operating numerous stores out of which it sold Guess-branded merchandise. For reasons not pertinent here, the relationship between the parties soured, and on May 21, 1999, Guess initiated an arbitration against PLB before the American Arbitration Association, seeking to terminate the licensing agreement due to the alleged breach. Guess was represented by [MS&K]." (*Benasra v. Mitchell Silberberg & Knupp* (2002) 96 Cal.App.4th 96, 98 [116 Cal.Rptr.2d 644], fn. omitted.)

[3] Petrocelli and Welsh submitted a demurrer to the amended complaint on this ground. The demurrer was considered moot by the trial court as a result of its ruling on the motion to strike.

Guess in connection with the arbitration while it was still doing work for appellants or some of them. Benasra further stated that Petrocelli "relentlessly cross-examined me [during the Guess arbitration] [citations] about housekeepers, drivers and girlfriends allegedly on PLB's payroll [citation], my apartment in Paris [citation], a ring I gave to Sharon Stone [citation], and the purported connection between my personal expenses and PLB's problems in paying royalties [citation]. While I engaged in no improprieties as the owner of an S-Corporation, [MS&K] nonetheless made an issue of my personal life—about which [MS&K] learned as PLB's lawyers . . . ." The declaration also stated that "[appellants] have incurred more than $250,000 to date in attorneys' fees seeking to prevent [respondents] from breaching their duties of confidentiality and loyalty in connection with matters undertaken for Guess adverse to [appellants]."

Appellants separately requested permission to conduct discovery in advance of the motion to strike, seeking information that would show which attorneys at MS&K worked on appellants' matters and Guess matters and when that work was performed. The trial court denied the discovery motion, stating in its order: "To establish a cause of action for legal malpractice, [appellants] must demonstrate: (1) the existence of a duty of care; (2) breach of that duty; and (3) damages. Clearly [appellants] do not need any discovery to establish the first and third elements; this evidence must be in [appellants'] possession. [Appellants] do not point to any particular discovery requests that relate to the breach of a duty of care by [respondents]. [¶] To establish a cause of action for breach of fiduciary duty, [appellants] must demonstrate: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages. Again, the only element on which [appellants] could possibly need to conduct discovery is breach of the duty. [Appellants] also fail to point to any particular discovery requests that relate to the breach of fiduciary duty. [¶] [Appellants] presumably know when [respondents] represented interests adverse or potentially adverse to theirs. After all, this case concerns [respondents'] representation of Guess?, Inc. in a specific arbitration proceeding. [Appellants] also know the nature of the matters in which the [respondents] represented them. [Appellants] know or should know what work [respondents] did for them. Thus, [appellants] should be able to show—without help from [respondents]—how the matters were similar, and the potential for a conflict."

The court granted the motion to strike. The court concluded that since section 425.16 "encompasses any cause of action against a person arising from any statement or writing made in, or in connection with an issue under consideration or review by an official proceeding or body," it applied to the claim before it, which the court characterized as follows: "[Appellants] are seeking to impose liability on [respondents] because of their representation of a client in an arbitration proceeding" and "seek to impose civil liability on

[respondents] from statements and writings made either directly in or in connection with the Guess? arbitration and judicial proceedings to confirm the award."

Turning to the merits, the court reproved appellants for incorporating the Benasra declaration in their opposition rather than addressing the issue directly. The court then went on to say: "Assuming, arguendo, that the Benasra declaration contains sufficient admissible evidence to establish breaches of the duties at issue (and it is not at all clear that it does), the declaration contains no evidence of damages proximately caused by any breach. Although . . . Benasra claims to have suffered damages in the form of attorneys' fees incurred in seeking redress of his grievances, these are not damages proximately caused by the breaches at issue. To establish a prima facie case for legal malpractice or breach of fiduciary duty arising out of [respondents'] representation of Guess? in the underlying arbitration, Benasra must present competent, admissible evidence tending to establish that the underlying arbitration award would have been more favorable, or would not have been confirmed, had the [respondents] not breached their legal duties."

Appeal was taken from the order granting the motion to strike, and the subsequent order granting attorney fees and costs to respondents. The appeals were consolidated by order of this court.

## DISCUSSION

Section 425.16 provides in pertinent part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Id.*, subd. (b)(1).) The special motion to strike provides a mechanism for screening out merit-less suits at an early stage. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 739 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

The Supreme Court has said that "plainly read, section 425.16 encompasses any cause of action against a person arising from any statement or writing made in, or in connection with an issue under consideration or review by, an official proceeding or body." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113 [81 Cal.Rptr.2d 471, 969 P.2d 564].) The court has also observed that "[n]othing in the statute itself categorically excludes any particular type of action from its operation." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

Consistent with these opinions, the court held in *Jarrow Formulas, Inc. v. LaMarche* that section 425.16 applies to malicious prosecution actions. Noting that the statute includes within its purview "any written or oral statement or writing made before a . . . judicial proceeding," and "any written . . . statement or writing made in connection with an issue under consideration or review by a . . . judicial body" (§ 425.16, subd. (e)(1), (2)), the court agreed with the Court of Appeal's earlier decision in the same case that the statute's plain language encompassed malicious prosecution: "[Defendant] was sued for filing a cross-complaint in the former municipal court and Brutzkus, her attorney, for written and oral statements he made while acting as an advocate for [defendant] in the municipal court action. Accordingly, the Court of Appeal reasoned, this action falls within the ambit of a 'cause of action against a person arising from an act . . . in furtherance of the person's right of petition' [citation], as statutorily defined. [¶] As a plain language matter, the Court of Appeal unquestionably was correct." (*Jarrow Formulas, Inc. v. LaMarche, supra,* 31 Cal.4th at p. 734.)

In a case decided by this court after the trial court's ruling, *Jespersen v. Zubiate-Beauchamp, supra,* 114 Cal.App.4th 624 [7 Cal.Rptr.3d 715], we addressed the issue of whether actions for attorney malpractice are subject to anti-SLAPP motions. Defendants argued, and we agreed, "that an attorney who has been made a defendant in a lawsuit based upon a written or oral statement he or she made on behalf of clients in a judicial proceeding or in connection with an issue under review by a court, may have standing to bring a SLAPP motion." (*Jespersen,* at p. 629.)

█ It did not follow, however, "that a legal malpractice action may be subject to a SLAPP motion merely because it shares some similarities with a malicious prosecution action and involves attorneys and court proceedings." (*Jespersen v. Zubiate-Beauchamp, supra,* 114 Cal.App.4th at p. 630.) As the court stated in *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–77 [124 Cal.Rptr.2d 519, 52 P.3d 695]: "The mere fact an action was filed after protected activity took place does not mean it arose from that activity." We said in *Jespersen:* "[A] moving defendant's burden to show a ' "cause of action . . . arising from" ' is not met simply by showing that the *label* of the lawsuit appears to involve the rights of free speech or petition; he or she must demonstrate that the *substance* of the plaintiff's cause of action was an act in furtherance of the right of petition or free speech." (*Jespersen,* at p. 630.)

Looking beneath the surface, we discerned that the malpractice action was "not based upon [defendants'] having filed an answer or cross-complaint in

the action in which [they] represented [plaintiffs]" or "based upon [defendants'] having filed declarations, motions, or other papers in that action, or upon [defendants'] appearance on discovery or other motions." (*Jespersen v. Zubiate-Beauchamp, supra,* 114 Cal.App.4th at p. 630.) Instead, the actions that formed the basis of the complaint consisted of: "(1) a failure to serve timely discovery responses, resulting in a waiver of objections pursuant to [Code of Civil Procedure] section 2031, subdivision (1); (2) a failure to comply with a court order to serve responses without objections; and (3) a failure to comply with a second court order." (*Id.* at p. 631, italics omitted.) In other words, "the alleged attorney malpractice did not consist of any act in furtherance of anyone's right of petition or free speech, but appellants' negligent failure to do so on behalf of their clients." (*Ibid.*, italics omitted.)

Defendants in *Jespersen* insisted that the claim was based on papers filed in the underlying action, and in particular a declaration in which the attorney admitted "that she continued to apply her own interpretation to the discovery request, although it was at odds with opposing counsel's and the court's." (*Jespersen v. Zubiate-Beauchamp, supra,* 114 Cal.App.4th at p. 632.) We explained why that was not so: "Plainly, [plaintiffs'] cause of action is not based on [the attorney's] declaration or any of [defendants'] declarations. [Defendants] have not been sued for having negligently filed declarations admitting their malpractice, but for their failure to comply with a discovery statute and two court orders to do so. [Defendants] have failed to demonstrate that such conduct amounts to constitutionally protected speech or petition, and we reject their attempt to turn garden-variety attorney malpractice into a constitutional right. Thus, we need not consider whether plaintiffs demonstrated a probability of prevailing on the claim." (*Ibid.*)

Respondents here attempt to persuade us that *Jespersen* supports their position, claiming that "[MS&K] 'has been made a defendant in a lawsuit based upon a written or oral statement [it] made on behalf of clients in a judicial proceeding or in connection with an issue under re view by a court' "; that "[MS&K] is not being sued for its failure to do anything on behalf of [appellants]"; and that "[MSK] is being sued for its affirmative statements on behalf of Guess in, and in connection, with the Guess Arbitration and its alleged statements to Guess in connection with the Guess Arbitration containing confidential information [MS&K] allegedly obtained from [a]ppellants." (Quoting *Jespersen v. Zubiate-Beauchamp, supra,* 114 Cal.App.4th at p. 629.)

Respondents' contention that the claims against them are based on written or oral statements made on Guess's behalf in the arbitration is not accurate.

Appellants' claims are based on rule 3-310(C) of the State Bar Rules of Professional Conduct, which provides that an attorney "shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter," and on rule 3-310(E), which provides that an attorney "shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

█ As we held in our decision in *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017 [117 Cal.Rptr.2d 685] (*American Airlines*), a breach of duty of loyalty based on violation of these rules occurs whether or not confidences are actually revealed in the adverse action. In that case, defendant attorney had agreed to testify on behalf of a corporation, a Swiss aircraft broker called ADO, as to matters known or reasonably available to the organization in connection with litigation between ADO and McDonnell-Douglas. Plaintiff American Airlines had not been a party to that litigation, but became involved because a document request by ADO related to American's dealings with McDonnell-Douglas and its purchase of the type of aircraft that was the subject of the litigation. American had previously entered into a confidential settlement agreement with McDonnell-Douglas in a dispute over the aircraft. The attorney had previously done work for American, and advised it in connection with the document request in the ADO/McDonnell-Douglas litigation.

The attorney went ahead with the assignment over American's objections. During his deposition, McDonnell-Douglas focused on information the attorney had previously obtained from American. The attorney refused to answer. American sued the attorney for, among other things, breach of fiduciary duty/duty of loyalty. On appeal from a verdict in favor of American, we considered the effect of the fact that the attorney made it a condition of his employment with ADO that he not be required to reveal confidential information obtained from American. (*American Airlines, supra*, 96 Cal.App.4th at p. 1039.) We "categorically reject[ed]" the contention that this avoided a breach of the rules: "It is anathema to the State Bar Rules of Professional Conduct to suggest that an attorney can place himself in a situation in which he undertakes adverse representation of a third party, and the client cannot object because the attorney has promised not to disclose the client's confidential information even though the information may be decidedly helpful to the new client. It is precisely this compromised situation, when the burden of

deciding which client to favor is placed solely on the attorney's shoulders and within the attorney's sole power to decide, that Rule 3-310 is designed to avoid. In other words, [the attorney's] promise to maintain the confidences of American is entirely dependent on his self-assumed position as arbiter of his own fidelity and what is and is not a privileged communication. That is not a permissible avoidance of his fiduciary duty." (*Id.* at p. 1039.)

We further stated: "Everything [the attorney] learned about the [aircraft] while representing American was placed beyond American's control and its confidential status depended on [the attorney's] promise to safeguard that information. Clients always have to trust attorneys to maintain confidences imparted during the course of the attorney-client relationship, but they are not compelled to accept the attorney's invitation to 'trust me' when he undertakes to align himself with a new client whose interests pose a conflict of interest. A client is simply not required to forfeit the right to control the disclosure of its confidential information to the unfettered determination of its attorney regardless of his vow to protect the client's confidences." (*American Airlines, supra*, 96 Cal.App.4th at p. 1040.)

In the final analysis, the deciding factor was "the fact that [the attorney] put himself in the position to be asked general questions by [McDonnell-Douglas], thus creating an ethical dilemma. 'The actual use or misuse of confidential information is not determinative; it is the possibility of the breach of confidence which controls. [Citation.]' (*David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884, 891 [250 Cal.Rptr. 339].) It was not necessary for American to establish that [the attorney] answered the questions, thus revealing confidential information, in order to prove that [the attorney] breached his fiduciary duty to American. He placed the noose around American's neck, without its consent, promising all the while not to kick over the chair on which it stood, blithely ignoring the sweat forming on the corporate brow. He may have been confident in his ability to resist the temptation to favor ADO's interests, but the State Bar Rules of Professional Conduct exist to prevent clients like American from being placed in such a precarious position. 'Nor does it matter that the intention and motives of the attorney are honest. The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent.' (*Anderson v. Eaton* [(1930)] 211 Cal. 113, 116 [293 P. 788].) We do not doubt that [the attorney] believed he could maintain his client's confidence, but American simply does not have to take his word for it." (*American Airlines, supra*, 96 Cal.App.4th at p. 1043.)

Defendants in *American Airlines* argued there was no basis for imposing liability because there was no evidence of actual injury. We disagreed: "American did prove just that with evidence that despite its legitimate protests, [the attorney] persisted in representing ADO. American was compelled to appear at the . . . deposition to ensure [the attorney] was disqualified from representing a conflicting interest that imperiled American's confidences. [The attorney] actively opposed those efforts. Clearly he owed a duty of loyalty to American that he did not fulfill, causing damage to American. . . . [¶] [H]e ceremoniously declared that he and [his firm] terminated the relationship with American to undertake a responsibility with an entity that was pursuing his client's confidences; confidences he and his law firm had been engaged to protect. It matters not that in the final analysis American's confidences were not disclosed. What matters more is that [the attorney and his firm] exhibited an absence of loyalty when they jettisoned American in order to assume a preferred position with ADO." (*American Airlines, supra*, 96 Cal.App.4th at p. 1044.)

As our decision in *American Airlines* makes clear, the actual disclosure of confidences by a former attorney during litigation is not required to form the basis for the tort of breach of duty of loyalty. The breach occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client. Therefore, respondents' argument that section 425.16 applies to this tort must fail. In other words, once the attorney accepts a representation in which confidences disclosed by a former client may benefit the new client due to the relationship between the new matter and the old, he or she has breached a duty of loyalty. The breach of fiduciary duty lawsuit may follow litigation pursued against the former client, but does not arise from it. Evidence that confidential information was actually used against the former client in litigation would help support damages, but is not the basis for the claim. As appellants so aptly put it, their claim is not based on "filing a petition for arbitration on behalf of one client against another, but rather, for failing to maintain loyalty to, and the confidences of, a client."

For the reasons discussed, the trial court erred in granting respondents' anti-SLAPP motion to strike and the judgment entered in favor of respondents must be reversed.[4] The award of attorney fees to respondents must also be reversed.

---

[4] Petrocelli and Welsh contend that the judgment as to them should be sustained based on the statute of limitations. The statute of limitations defense was raised by way of demurrer and in support of the merits of the anti-SLAPP motion to strike. We do not reach the merits of the anti-SLAPP motion because we do not believe section 425.16 applies in this situation. The trial court did not resolve the demurrer, since it was moot in light of the ruling on the motion to strike.

## DISPOSTION

The judgment and the orders (1) striking the amended complaint and (2) awarding attorney fees to respondents are reversed. Appellants are to recover their costs on appeal.

Epstein, P. J., and Grimes, J.,* concurred.

Respondents' petition for review by the Supreme Court was denied February 16, 2005.

---

*Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.