Filed 7/25/22  Intelligent SCM v. Roten CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| INTELLIGENT SCM, LLC, dba AMERICAN WORLDWIDE AGENCIES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RUSSELL W. ROTEN, et al., <br><br> Defendants and Appellants. | B303362 <br><br> (Los Angeles County Super. Ct. No. BC572581) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, Mark T. Drooks, and Shoshana E. Bannett for Defendants and Appellants Duane Morris LLP and Russell W. Roten.

Foley, Bezek, Behle & Curtis and Roger N. Behle, Jr. for Defendant and Appellant Andrew Scott.

Howard M. Zelener for Plaintiff and Respondent.

Intelligent SCM, LLC (ISCM) sued its former attorneys, Russell Roten (Roten) and Duane Morris LLP (Duane Morris) (collectively, the Duane Morris defendants), for breach of fiduciary duty and breach of the duty of loyalty. In addition, ISCM sued Andrew Scott (Scott), ICSM's founder and one of its former managers, for aiding and abetting the Duane Morris defendants' alleged misconduct. Pursuant to the anti-SLAPP statute (Code Civ. Proc.,[1] § 425.16), the Duane Morris defendants and Scott filed a special motion to strike the entirety of ISCM's supplemental complaint against the Duane Morris defendants and the sole cause of action asserted against Scott in ISCM's Fourth Amended Complaint. The trial court denied the motion. We are asked to decide whether the challenged causes of action arise from defendants' exercise of their constitutional rights of petition and, if so, whether the litigation privilege precludes showing a probability of success on those claims.

## I. BACKGROUND

### A. *ISCM's Claims Against Scott and the Duane Morris Defendants*[2]

ISCM, a freight forwarding company, was originally solely owned by Scott. In early 2012, in order to rescue the company's fortunes, Scott sold membership interests in ISCM to Alex

---

[1]  Undesignated statutory references that follow are to the Code of Civil Procedure.

[2]  The summary that follows is derived from the allegations in the operative pleadings and, to some degree, the parties' evidence submitted in connection with the joint special motion to strike (§ 425.16, subd. (b)(2)).

Knowles (Knowles) (48 percent), Peter Lamy (Lamy) (10 percent), and Graham Burford (Burford) (10 percent). The four members agreed that Scott would be responsible for securing the necessary legal documentation for the newly-recapitalized ISCM. Scott retained Roten, who was the managing partner of the Los Angeles office of Duane Morris, to act as ISCM's general counsel and to provide legal services to the company and its four members. Although Roten had a history of working with Scott, he did not disclose his prior relationship with Scott to the other members of ISCM.

Without notice to the other members of the company, and at Scott's insistence, Roten structured the company's revised operating agreement so that it favored Scott. Approximately two years after they agreed to take an ownership interest in the company, the other three members of ISCM confronted Scott over a series of financial improprieties they discovered in the company's books and records. Among other things, the three other members discovered Scott allowed a company run by his sister and brother-in-law to incur a debt to ISCM in excess of $250,000. In addition, they uncovered evidence Scott had embezzled approximately $133,000 from ISCM.

When Scott was confronted with these accusations, he retained Roten to help defend against them. Instead of immediately recusing himself and his firm due to a conflict of interest between ISCM and Scott, Roten is alleged to have secretly provided assistance to Scott in his dispute with ISCM and the other members of the company. Among other things, the Duane Morris defendants refused to investigate evidence of Scott's wrongdoing, accepted unauthorized payments for legal fees from ISCM's bank account, and were aware of and agreed

3

with a course of action by Scott that led to freezing of ISCM's bank accounts and cancelation of ISCM's Indirect Air Carrier certification, which effectively shut down the company's ability to operate its airfreight business.

On May 20, 2014, Knowles, acting on behalf of ISCM, filed a derivative action against Scott (the Embezzlement Action). A week later, ISCM terminated the Duane Morris defendants as the company's general counsel and requested the return of ISCM's client file. As alleged, the Duane Morris defendants refused to withdraw from their representation of ISCM and continued to act as the company's counsel until July 2014. They also refused to turnover ISCM's client file until ordered to do so by the judge overseeing the Embezzlement Action and even then continued to withhold documents from the company. The Embezzlement Action was ultimately resolved in favor of Knowles and ISCM with a judgment of more than $550,000 being entered against Scott.[3]

In February 2015, nine months after Knowles began the Embezzlement Action, ISCM sued the Duane Morris defendants in this action, which we shall refer to as the Malpractice Action; Scott was later added as a defendant.

In its Fourth Amended Complaint, ISCM asserted various causes of action against the Duane Morris defendants, including breach of fiduciary duty and legal malpractice. These claims, while focused primarily on misconduct in the period between the

---

[3] The judgment against Scott in the Embezzlement Action was affirmed by another division of this court in an unpublished decision. (*Knowles v. Scott* (Feb. 25, 2019, B279562) [nonpub. opn.].)

4

recapitalization of the company and their dismissal as corporate counsel, also included allegations about the Duane Morris misconduct following their dismissal—most significantly the delay in turning over ISCM's client file.

The Fourth Amended Complaint asserted only one cause of action against Scott, an aiding and abetting claim, which was narrower than the claims asserted against the Duane Morris defendants. ISCM alleged that Scott, the company's former chief operating officer, aided and abetted the Duane Morris defendants in their misconduct after they had been discharged as the company's general counsel. ISCM averred the Duane Morris defendants "secretly act[ed] as Scott's other personal attorneys" in the Embezzlement and Malpractice Actions and "Scott accepted this assistance knowing it would aid and abet [the Duane Morris defendants'] efforts to cover up [their] wrongdoing." The specific wrongs alleged in the aiding and abetting cause of action were Scott's consent to two actions by the Duane Morris defendants: their refusal to promptly return ISCM's client file in the Embezzlement Action (a course of action the Duane Morris defendants publicly justified on Scott's resistance to returning the file) and their preparation of Scott's pleadings and other filings in the Embezzlement and Malpractice Actions.

ISCM later filed a supplemental complaint in this Malpractice Action against only the Duane Morris defendants, which amplified the Fourth Amended Complaint's breach of fiduciary duty and legal malpractice claims by including allegations of professional misconduct that occurred after commencement of the Malpractice Action. The supplemental complaint asserted four causes of action, each one premised on

5

the Duane Morris defendants' acquisition of ISCM's confidential information while acting as the company's legal counsel. Each cause of action alleged a breach of the Duane Morris defendants' duty of loyalty and their fiduciary duty[4] to their former client in connection with various legal proceedings.[5] In each cause of action, ISCM asserted the Duane Morris defendants "secretly acted as Scott's attorneys[,] secretly represented Scott, secretly provided advice and strategy to Scott, secretly used and disclosed confidential knowledge of ISCM's affairs and ISCM's confidential information to benefit Scott, and secretly prepared, and participated in the preparation of, pleadings filed by Scott."[6] The

---

[4] ISCM alleged the Duane Morris defendants violated the California State Bar Rules of Professional Conduct, specifically, former rule 3-310(E) in effect until November 1, 2018, and rule 1.9, effective November 1, 2018. Those rules preclude an attorney from doing anything which will injuriously affect his or her former client in any matter in which he or she formerly represented the client or at any time use against the former client knowledge or information acquired by virtue of the previous relationship. (*O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1124.) In addition, ISCM alleged the Duane Morris defendants violated Business and Professions Code section 6068, which, among other things, requires an attorney to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." (Bus. & Prof. Code, § 6068, subd. (e)(1).)

[5] The Duane Morris defendants were not parties to the Embezzlement Action or either of the cross-actions in the Malpractice Action.

[6] In the supplemental complaint's fourth cause of action, ISCM qualified its core allegation slightly, contending the Duane

6

Duane Morris defendants aided Scott in secret, the supplemental complaint alleged, because they could not do so openly without first obtaining ISCM's informed written consent, which they never sought. Such conduct by the Duane Morris defendants was "materially adverse to . . . and . . . to the disadvantage of the interests of ISCM" and caused the company to suffer loss and damage.

### B. *Defendants' Anti-SLAPP Motion*

Pursuant to the anti-SLAPP statute, the Duane Morris defendants and Scott jointly moved to strike the entirety of the supplemental complaint and the aiding and abetting cause of action against Scott in the Fourth Amended Complaint. The moving parties argued their alleged misconduct was protected by the anti-SLAPP statute because each cause of action was based on "'classic petitioning activity,'" namely their conduct in defense of themselves in the Malpractice Action. They also maintained ISCM could not show a probability of prevailing because its claims were barred by, among other things, the litigation privilege. In support of their motion, the moving parties submitted exhibits intended to show that the appearance of the same document control numbers on filings by both the Duane Morris defendants and by Scott was innocent, i.e., the submissions by Scott were not ghost-written by the Duane Morris defendants or their attorneys but wholly authored by Scott's attorneys who merely used documents supplied by counsel for the Duane Morris defendants as "templates."

___

Morris defendants secretly "participated in the preparation of all, or nearly all, pleadings filed by Scott" in the Malpractice Action.

7

ISCM opposed the anti-SLAPP motion.  The company contended the moving parties had not met their threshold burden under the anti-SLAPP statute because an attorney's breach of the duty of loyalty to a former client is not anti-SLAPP protected activity and because the aiding and abetting of such non-protected activity cannot be protected either.  In addition, ISCM argued the litigation privilege was inapplicable in an action by a former client against an attorney for breach of professional duties.  ISCM, however, did not offer any argument about whether the litigation privilege applied to its claims against Scott.

In reply, the Duane Morris defendants argued, among other things, that the conduct of which ISCM complained was not their conduct, but the conduct of their counsel in the Malpractice Action, i.e., "every time [ISCM] accuses 'Duane Morris' of 'representing Scott,' [ISCM] really means that Duane Morris's current litigation *counsel* . . . allegedly assisted *Scott's* litigation counsel . . . ."  For his part, Scott emphasized ISCM's "fail[ure] to rebut (let alone even address)" his argument that the aiding and abetting cause of action was barred by the litigation privilege.

C.  *The Trial Court Denies Defendants' Anti-SLAPP Motion*

On December 20, 2019, after two days of oral argument, the trial court adopted its tentative ruling denying defendants' anti-SLAPP motion as its final order.

With regard to the supplemental complaint, the court found the Duane Morris defendants failed to meet their threshold burden to show ISCM's causes of actions arose out of their petitioning conduct.  The court reasoned:  "While it is true that

8

ISCM alleges conduct that could be fairly characterized as written or oral statements made in connection with judicial proceedings, the gravamen or principal thrust of the claims have to do with the breach of the duty of loyalty owed by the [Duane Morris defendants] to ISCM. In other words, ISCM claims that it was injured by virtue of the [Duane Morris defendants'] disloyalty. That one of the ways that the [Duane Morris defendants] w[ere] disloyal was the drafting of pleadings on behalf of an adverse party does not confer anti-SLAPP protection on the claims."

As for the aiding and abetting cause of action against Scott, the trial court found Scott's "substantial assistance to the [Duane Morris defendants] in furtherance of their breach of fiduciary duty [wa]s indistinguishable from liability for the [Duane Morris defendants'] own breach of fiduciary duty." Because the court found the claims in the supplemental complaint did not arise from protected activity, it correspondingly found "the aiding and abetting claims against Scott [in the Fourth Amended Complaint] d[id] not arise from protected activity."[7]

## II. DISCUSSION

The Duane Morris defendants failed to make a prima facie showing that the causes of action alleged against them arise out of protected activity. Although ISCM made reference to constitutionally-protected petitioning activity in the supplemental complaint (the ghost-writing of Scott's filings in the

---

[7] The trial court did not consider (because it was unnecessary) whether ISCM established a probability of prevailing on its claims.

9

Embezzlement and Malpractice Actions), the company's causes of action do not arise from this activity. Rather, ISCM's causes of action arise from breaches of the duty of loyalty by the Duane Morris defendants, i.e., allegedly acting as Scott's de facto trial counsel and disclosing confidential corporate information to the disadvantage of the company. The ghost-written pleadings and motions are merely evidence of the Duane Morris defendants' disloyal conduct. Because ISCM's claims arose out of breaches of duty only incidentally connected with litigation activity, the trial court properly denied the joint motion as to the Duane Morris defendants.

The same cannot be said, however, for the trial court's ruling with respect to Scott. The aiding and abetting cause of action against him is based on communicative conduct made in connection with pending litigation—Scott allegedly agreeing to the plan by the Duane Morris defendants to resist for as long as possible turning over ISCM's client file in the Embezzlement Action and consenting to the ghost-writing of his pleadings and other court filings by the Duane Morris defendants in both the Embezzlement and Malpractice Actions. That communicative conduct is protected under the anti-SLAPP statute because it was undertaken in furtherance of the right of petition. With Scott having met his threshold burden, it fell to ISCM to show a probability of prevailing by showing that its claims were not barred by the litigation privilege, something it elected not to do. That accordingly requires reversal of the trial court's order as to Scott.

*A.    The Anti-SLAPP Statute*

The anti-SLAPP statute was enacted to curtail lawsuits "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition . . . ." (§ 425.16, subd. (a).)  "[A] special motion to strike under section 425.16 involves a two-step process.  First, the moving defendant must make a prima facie showing 'that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech . . . ."' [Citation.]"  (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 420 (*Montebello*); accord, *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061) (*Park*) ["the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged"].)  If the defendant carries this burden, the plaintiff must then demonstrate its claims have at least "'minimal merit.'" (*Park, supra*, at 1061; *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385 (*Baral*) [discussing the showing that must be made at the second stage].)  "The procedure is meant to prevent abusive SLAPP suits, while allowing 'claims with the requisite minimal merit [to] proceed.' [Citation.]"  (*Montebello, supra*, 1 Cal.5th at 420.)

Our review of the trial court's order denying defendants' joint anti-SLAPP motion is de novo. (*Park, supra*, 2 Cal.5th at 1067.)

11

> B.    *ISCM's Causes of Action in the Supplemental Complaint Against the Duane Morris Defendants Do Not Arise Out of Protected Activity*
>
>> 1.    *The anti-SLAPP statute and attorney malpractice claims*

A party filing an anti-SLAPP motion satisfies the first prong of the anti-SLAPP statute if he or she makes a prima facie showing that the plaintiff's cause of action "aris[es] from" an act the defendant performed in furtherance of the defendant's right of petition or free speech. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*Cotati*); accord, *Park*, *supra*, 2 Cal.5th at 1062 ["A claim arises from protected activity when that activity underlies or forms the basis for the claim"].) "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, *supra*, at 1063; accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010, 1015 (*Bonni*) [holding the anti-SLAPP analysis begins with a consideration of the elements of each claim, "the actions alleged to establish those elements, and whether those actions are protected"].) In so doing, courts should be "attuned to and . . . respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Park*, *supra*, at 1064.)

Whether a claim is based on protected activity turns on "whether the "'core injury-producing conduct'" warranting relief under the cause of action is protected." (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 698 (*Mission Beverage*).) "[T]he mere fact an action was filed after protected

12

activity took place does not mean it arose from that activity." (*Cotati*, *supra*, 29 Cal.4th at 76-77.) Rather, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*Id*. at 78.) That is because "[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92; accord, *Park*, *supra*, 2 Cal.5th at 1060 ["[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of . . ."].) "Assertions that are 'merely incidental' or 'collateral' are not subject to" the anti-SLAPP statute, and "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, *supra*, 1 Cal.5th at 394; accord, *Bonni*, *supra*, 11 Cal.5th at 1012.)

There are four categories of "protected activity" under the anti-SLAPP statute. The pertinent categories in this case cover "any written or oral statement or writing made before . . . a judicial proceeding" or "in connection with an issue under consideration or review by a . . . judicial body . . . ."[8] (§ 425.16, subds. (e)(1) & (2).)

---

[8] In their joint anti-SLAPP motion, defendants also claimed a third category of protected activity was implicated: "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) Defendants, however, did not support this claim in the trial court with argument or evidence establishing that their

13

"The anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation. [Citation.] Indeed, courts have adopted 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.' [Citation.]" (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537 (*Kolar*); see also *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [anti-SLAPP statute protects "communicative conduct such as the filing, funding, and prosecution of a civil action," including such acts when "committed by attorneys in representing clients in litigation"].)

Although the anti-SLAPP statute provides broad protection for litigation-related activities, "it does not follow that any claims associated with those activities are subject to the anti-SLAPP statute." (*Kolar*, *supra*, 145 Cal.App.4th at 1537; accord, *Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1275 [client's action against his or her attorney, whether it is pleaded as a claim for malpractice, breach of fiduciary duty, or any other theory of recovery, is not subject to the anti-SLAPP statute "merely because some of the allegations refer to the attorney's actions in court"]; *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1037 ["Not all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16"].)

Legal malpractice claims, for instance, have been routinely held not to fall within the ambit of the anti-SLAPP statute. As

---

alleged conduct concerned a public issue and they do not so argue on appeal.

14

another panel of this court observed, "The authorities have established that the anti-SLAPP statute does not apply to claims of attorney malpractice.  As stated in one authoritative work, 'California courts have held that when a claim [by a client against a lawyer] is based on a breach of the fiduciary duty of loyalty or negligence, it does not concern a right of petition or free speech, though those activities arose from the filing, prosecution of and statements made in the course of the client's lawsuit.  The reason is that the lawsuit concerns a breach of duty that does not depend on the exercise of a constitutional right.' [Citations.]"[9] (*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 702 (*Chodos*)

---

[9]     Among the growing body of case law holding legal malpractice claims are not protected by the anti-SLAPP statute are the following decisions which either affirm the denial or reverse the granting of an anti-SLAPP motion brought by a defendant lawyer or law firm: *Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496, 505 (*Loanvest*); *Castleman, supra,* 216 Cal.App.4th at 494; *PrediWave Corp. v. Simpson Thatcher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1226-1227 (*PrediWave*); *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733 (*Freeman*); *Kolar, supra,* 145 Cal.App.4th at 1535; *Benasra v. Mitchell, Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1189 (*Benasra*); see also *Sprengel v. Zbylut* (2015) 241 Cal.App.4th 140, 158, fn. 9 [affirming denial of anti-SLAPP motion by defendant attorneys, stating, "We are not aware of any case that has directly rejected the holdings in *Benasra, Freeman, PrediWave, Castleman* and *Loanvest*.  This line of cases extends back more than a decade and includes published decisions from five of our six districts. . . . Although the Legislature has amended section 425.16 and other SLAPP provisions several times over the past 10 years, it has never signaled any disagreement with *Benasra* or its progeny"].)

15

[reversing grant of anti-SLAPP motion because malpractice claims did not arise out of protected activity]; accord, *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491 (*Castleman*) ["A growing body of case law holds that actions based on an attorney's breach of professional and ethical duties owed to a client are not SLAPP suits, even though protected litigation activity features prominently in the factual background"].)

Malpractice actions, in other words, are different than other types of lawsuits brought against attorneys, such as malicious prosecution claims, which can fall within the ambit of the anti-SLAPP statute's protections. (See, e.g., *Chodos*, *supra*, 210 Cal.App.4th at 706 ["Malpractice involves a breach of duty by neglecting to do an act or doing an act, not the right of petition"]; see also *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735 [holding malicious prosecution actions necessarily satisfy the first step of the section 425.16 analysis because they arise from an underlying lawsuit, or petition to the judicial branch].)

*Loanvest*, *supra*, 235 Cal.App.4th 496, is illustrative. In that case, the plaintiff, a limited liability company, sued its former attorney for malpractice, alleging he breached his duty of loyalty by taking legal positions in prior litigation that were intended to benefit the company's previous manager who controlled the company. (*Id.* at 499-500.) More specifically, the complaint alleged the attorney "'never represented [the company's] interests, instead egregiously breaching the duty of loyalty owed to his purported client' [by] aid[ing] his 'true client,' [the company's manager], in 'looting' [the company] to pay [the manager's] obligations." (*Id.* at 500.) The appellate court ruled the claim could not be stricken under the anti-SLAPP statute

16

because "numerous [prior] decisions" had found the statute did not apply "[w]here . . . a legal malpractice action is brought by an attorney's former client, claiming that the attorney breached fiduciary obligations to the client as the result of a conflict of interest or other deficiency in the representation of the client." (*Id*. at 504.)

> ### 2. The Duane Morris defendants did not carry their burden to show the supplemental complaint arises from protected activity

We begin our analysis with the elements of a cause of action for breach of fiduciary duty/duty of loyalty, which are: "(1) the existence of a relationship giving rise to a [fiduciary duty/duty of loyalty]; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 410; accord, *Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 312, fn. 7 (*Wittenberg*).)

In its supplemental complaint, ISCM alleged three different sources of injury-producing conduct by its former counsel: (1) they secretly represented Scott against the company and provided him with advice and strategy; (2) they secretly used and disclosed confidential knowledge of ISCM's affairs and ISCM's confidential information to benefit Scott in the Embezzlement and Malpractice Actions; and (3) they secretly prepared and participated in the preparation of litigation documents filed by Scott in those proceedings.

It is well-established that attorneys owe a duty of loyalty to their former clients, a duty which, in this instance, required the Duane Morris defendants "not do anything which w[ould] injuriously affect [ISCM] in any matter in which [they] formerly

17

represented [ISCM]" or "at any time use against [ISCM] knowledge or information acquired by virtue of the previous relationship." (*Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564, 573-574; accord, *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 (*Oasis West*); *People ex rel Deukmejian v. Brown* (1981) 29 Cal.3d 150, 155.) Providing secret counsel to Scott in the Embezzlement and Malpractice Actions and secretly disclosing confidential corporate information to benefit Scott in those actions would be inconsistent with the Duane Morris defendants' continuing duty of loyalty to ISCM. Such "garden-variety" attorney malpractice is not a constitutional right protected by the anti-SLAPP statute. (*Jespersen v. Zubiate–Beauchamp* (2003) 114 Cal.App.4th 624, 632; accord, *Wittenberg*, *supra*, 50 Cal.App.5th at 314-315 [holding attorney's alleged acts of representing clients with interests adverse to former client and using former client's confidential information in the new representation did not constitute protected activity under anti-SLAPP statute].)

The third category of alleged wrongdoing—ghost-writing Scott's litigation documents—is different than the other two categories. While on its face it involves petitioning activity that would be protected, the allegations are more contextual than substantive. That is to say, unlike the first two categories of wrongdoing that supply the elements of each cause of action in the supplemental complaint, the ghost-written pleadings and motions merely "supply evidence" of how the Duane Morris defendants breached their duty of loyalty to ISCM by secretly acting as Scott's trial counsel and/or providing Scott and his counsel with confidential corporate information to which they were not entitled. (*Park*, *supra*, 2 Cal.5th at 1064; see also *id*. at

1064-1066 [discussing the "distinction between speech that provides the basis for liability and speech that provides evidence of liability"].)  Moreover, the breach of their duty to ISCM did not occur when the Duane Morris defendants began ghost-writing documents for Scott, but earlier when they decided to forsake their continuing duty of loyalty to the company in favor of Scott. (*Benasra*, *supra*, 123 Cal.App.4th at 1189 ["the breach occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client"].)  This third category of alleged wrongdoing is accordingly unprotected by the anti-SLAPP statute.  (See, e.g., *Loanvest*, *supra*, 235 Cal.App.4th at 505 [the "fact that the complaint 'focus[es] specifically on particular statements or positions taken in connection with matters under review by a court,' . . . . does not alter the fact that the claim is . . . based on the alleged breach of loyalty owed to" the plaintiff]; *Castleman*, *supra*, 216 Cal.App.4th at 494 ["Although protected speech and petitioning are part of the 'evidentiary landscape' within which the action arose, the claims are ultimately based on the allegation that [the attorney] engaged in conduct inconsistent with the fiduciary obligations he owed to the respondents"]; *Benasra*, *supra*, 123 Cal.App.4th at 1189 [reversing grant of anti-SLAPP motion because plaintiff's claims were not based on defendant law firm's petitioning activity but on its alleged failure to "maintain loyalty to, and the confidences of, a client"].)

     *Peregrine Funding, Inc. v. Sheppard, Mullin, Richter & Hampton LLP* (2005) 133 Cal.App.4th 658 (*Peregrine*), upon which the Duane Morris defendants rely, is not to the contrary. In *Peregrine*, the plaintiffs were not former clients of the defendant law firm.  Rather, they were third party investors who

19

lost millions in a Ponzi scheme disguised as a successful mortgage lending business and a bankruptcy trustee. (*Id.* at 666, 668 & fn. 4.) The Duane Morris defendants' reliance on *Peregrine* is unavailing because, as other courts have recognized, claims by third parties against a law firm or lawyer are "vastly different" from claims by a former client. (*Kolar, supra,* 145 Cal.App.4th at 1540.) In contrast to a former client's claims against its former counsel, which encourage more competent petitioning activity and which are at issue here, claims by a third party against an attorney for petitioning activity are subject to the anti-SLAPP statute because such claims "clearly could have a chilling effect" on petitioning activity. (*Ibid.*)

Because the Duane Morris defendants failed to make the requisite threshold showing, ISCM was not required to establish a probability of prevailing on the merits of its claims and we need not, and do not, opine on that issue. (*PrediWave, supra,* 179 Cal.App.4th at 1228; accord, *Freeman, supra,* 154 Cal.App.4th at 733.)

C.    *ISCM's Aiding and Abetting Cause of Action Against Scott in the Fourth Amended Complaint Does Arise from Protected Activity*

"A defendant is liable for aiding and abetting another in the commission of an intentional tort, including a breach of fiduciary duty, if the defendant ""'knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act.'"" [Citation.]" (*Nasrawi v. Buck Consultants LLC* (2014) 231 Cal.App.4th 328, 343.) Because ISCM elected to premise its aiding and abetting cause of action on conduct that occurred after Scott was removed from his

20

leadership position with the company and no longer owed it a fiduciary duty, the company was required to allege Scott made "'"a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.'" [Citations.]" (*American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1477.)

Because aiding and abetting is a derivative cause of action (*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 579), ISCM urges us to focus our inquiry on the conduct Scott aided and abetted, namely the Duane Morris defendants' breach of their duties to their former client. But, as discussed *ante*, such a focus would be misdirected. We need to focus on the "'"core injury-producing conduct"'" (*Mission Beverage*, *supra*, 15 Cal.App.5th at 698), i.e., the specific actions allegedly taken by Scott, to see if they were protected petitioning activity under the statute. *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793 (*Bergstein*), which involves an aiding and abetting claim against a party who allegedly helped the plaintiffs' former lawyer commit malpractice, illustrates the point.

In *Bergstein*, the plaintiffs first sued their former attorney Susan Tregub (Tregub) for breach of fiduciary duty and professional negligence. (*Bergstein*, *supra*, 236 Cal.App.4th at 799.) After securing a multimillion dollar judgment against Tregub, plaintiffs sued lawyers who had represented their opponents in litigation over various financial transactions, contending, among other things, the lawyers aided and abetted Tregub in the breach of her fiduciary duties to the plaintiffs. (*Ibid*.) The plaintiffs asserted the defendant lawyers engaged in tortious conduct when they "'solicited and received . . . confidential, privileged, and/or proprietary

21

information'" from Tregub and used that information "'in devising the legal strategy to be employed [in the litigation] against [plaintiffs].'" (*Ibid.*) In addition, plaintiffs alleged the defendant attorneys "exchanged drafts of pleadings" with Tregub, including a Master Complaint against plaintiffs. (*Id.* at 799, 800.) The defendant attorneys filed a special motion to strike, which the trial court granted based on its conclusion the aiding and abetting claim arose from protected litigation activity. (*Id.* at 797, 802-803.)

On appeal, the plaintiffs claimed the attorney defendants were not being sued for their actions as litigation counsel or for any written or oral statement made in a judicial proceeding. (*Bergstein*, *supra*, 236 Cal.App.4th at 811.) Instead, the plaintiffs argued, the attorney defendants were being sued for the unprotected conduct of aiding and abetting the breach of Tregub's fiduciary duties to the plaintiffs. (*Ibid.*)

The Court of Appeal rejected plaintiffs' argument because it was based on a "mistaken view of the applicable legal principles." (*Bergstein*, *supra*, 236 Cal.App.4th at 811.) The *Bergstein* court explained that aiding and abetting Tregub's breach of fiduciary duties was simply the cause of action the plaintiffs asserted, "not the 'specific acts of alleged wrongdoing' that give rise to [the] cause[ ] of action." (*Ibid.*) It observed further that "the factual basis for defendants' allegedly tortious activity is centered in defendants' role as counsel." (*Ibid.*) Because the defendant lawyers' "litigation activities are at the core of plaintiffs' claims . . . . those claims arise from protected activity within the meaning of the anti-SLAPP statute." (*Id.* at 813.)

Here, the core injury-producing conduct as alleged in the aiding and abetting cause of action was the consent and

22

encouragement Scott gave to the Duane Morris defendants in connection with two legal proceedings. First, Scott agreed the Duane Morris defendants should resist the return of ISCM's client file in the Embezzlement Action and should do so on the basis that Scott was against such an action. Second, Scott allowed the Duane Morris defendants to prepare pleadings and other court filings in both the Embezzlement and Malpractice Actions. This alleged encouragement of, and consent to, the conduct of the Duane Morris defendants in the Embezzlement and Malpractice Actions were communications "made in connection with an issue under consideration or review by a . . . judicial body . . . ." (§ 425.16, subd. (e)(2); *Bergstein*, *supra*, 236 Cal.App.4th at 811-813 [holding out-of-court communications on the sharing of confidential information and the drafting of pleadings constituted activity protected by the anti-SLAPP statute].)

### D. ISCM's Aiding and Abetting Cause of Action Against Scott Is Barred by the Litigation Privilege

Having concluded that Scott cleared the prima facie bar for establishing ISCM's aiding and abetting cause of action arose from protected activity, we move to the second stage of anti-SLAPP analysis. To defeat the anti-SLAPP motion, ISCM bore the burden of demonstrating a probability of prevailing on the challenged claims. (*Baral*, *supra*, 1 Cal.5th at 384; *Oasis West*, *supra*, 51 Cal.4th at 820.) In evaluating whether a plaintiff has made that showing, a "court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.

It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Baral, supra*, at 384-385; *Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 63 [plaintiff need only "state[ ] and substantiate[ ] a legally sufficient claim"].)

A plaintiff cannot establish a probability of prevailing if the litigation privilege (Civ. Code, § 47, subd. (b)) precludes the defendant's liability on the claim. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.) The litigation privilege "'applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.)

Here, Scott's alleged misconduct—acceding to the Duane Morris defendants' wishes in connection with the return of ISCM's client file in the Embezzlement Action and allowing the Duane Morris defendants to secretly author Scott's pleadings and motions in both the Embezzlement and Malpractice Actions—was plainly communicative in nature. ISCM did not argue in the trial court that the litigation privilege did not apply as to Scott, nor does ISCM offer any such defense on appeal. The point is accordingly waived, and the litigation privilege precludes ISCM from making a minimal merit showing that would permit affirmance of the trial court's order as to Scott. (*Bergstein, supra*, 236 Cal.App.4th at 814-815 [holding litigation privilege barred

the plaintiffs' claim where the plaintiffs did "not identify *any* of defendants' conduct that was *not* a communication made in a judicial proceeding (or prior thereto) to achieve the objections of the litigation"].)

DISPOSITION

The trial court's order is affirmed as to the Duane Morris defendants.   The trial court's order is reversed as to Scott and remanded with directions to grant the anti-SLAPP motion as applied to him and to hold further proceedings as necessary and not inconsistent with this opinion.   The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

KIM, J.

25