Filed 4/2/24  Blatz v. MLG CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| BRIAN BLATZ et al., | |
| Plaintiffs and Respondents, | G062332 |
| v. | (Super. Ct. No. 30-2022-01253427) |
| MLG et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Walter P. Schwarm, Judge.  Affirmed.

MLG Attorneys at Law, Jonathan A. Michaels, and Travis R. Eagan for Defendants and Appellants.

BG Law, Philip J. Bonoli, Jason B. Komorsky, and Ronald P. Abrams for Plaintiffs and Respondents.

\*    \*    \*

After Brian Blatz, Eddie Alan Campos, and Scott A. Noll ("the Clients") sued MLG Attorneys at Law and Jonathan A. Michaels ("the Lawyers") for malpractice, the Lawyers moved to strike the first amended complaint (FAC) pursuant to Code of Civil Procedure[1] section 425.16 (the anti-SLAPP law). The trial court denied the motion based on the first prong of the anti-SLAPP analysis, ruling that the Clients' causes of action arose out of the Lawyers' alleged breach of their duty of loyalty, rather than out of any protected petitioning activity. The court did not rule on the second prong of the analysis, i.e., whether the Clients' causes of action had a probability of success on the merits.

On appeal, the Lawyers argue the court erred because "spoken negotiations and the written settlement agreement from [a] confidential mediation . . . are protected petitioning activity . . . ." They then argue at length why it would be improper to allow the Clients to rely on any communications made in the context of a confidential mediation to prove a malpractice claim.

We find no error and affirm the trial court's ruling. The court correctly determined the FAC's causes of action arise out of the Lawyers' breach of their duty of loyalty owed to the Clients, and their duty of care, rather than out of any specific statements or actions in connection with a legal proceeding. Consequently, the FAC is not subject to a special motion to strike under the anti-SLAPP law. Having reached that conclusion, we need not consider whether, or to what extent, the Clients might properly rely on mediation evidence to prove their case.

**FACTS**

The FAC alleges that in 2010 the Clients became involved in a business venture with Michael Failla, who invested money into an existing company formed by

_____

[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.

2

Campos. Due to a dispute with another investor, Steve Vande Vegt, Failla established a new company which acquired many of the assets of the business established by Campos. Although Failla allegedly promised to bring Blatz and Campos into the new company as principals, he never did; Noll however was briefly an employee.

In 2011, Vande Vegt filed a lawsuit against the new company, Failla and others, including the Clients. The Lawyers represented Vande Vegt in the litigation, which was settled in 2013. As part of the settlement, the parties collectively released each other from future claims.

After the Vande Vegt litigation was resolved, the Clients expected Failla to fulfill his promise to bring them into the company as officers, directors, shareholders and employees; instead, he refused. The Clients filed a lawsuit against Failla in 2015, and they engaged the Lawyers to represent them. The Failla litigation settled in December of 2018; the settlement again included reciprocal releases among all the parties as to both known and unknown claims. The intent of that settlement was to resolve all claims between Failla and the Clients.

The Lawyers, however, allegedly used the confidential information they learned in representing the Clients to solicit other potential clients to file litigation against Failla; in doing so, the Lawyers disclosed that confidential information to those clients and potential clients. The Clients did not consent to the use or disclosure of their confidential information.

In December 2018, the same month the Failla litigation settled, Troy Waymire, an investor in Failla's company, filed a lawsuit against Failla, the company, and other parties. Waymire was represented by the Lawyers, who relied on the confidential information they gained in representing the Clients in drafting the Waymire complaint. Waymire testified at his deposition that he first learned many of the facts underlying his lawsuit when he read the complaint the Lawyers had drafted.

3

In July 2020, Failla filed a cross-complaint against the Clients in the Waymire litigation, based on theories of indemnity, contribution, apportionment of fault and declaratory relief. Thus, the Lawyers' representation of Waymire is adverse to the interests of the Clients, insofar as any recovery by Waymire against Failla exposes the Clients to liability.

Blatz asserted the releases given to the Clients in the Failla litigation created a complete defense to Failla's cross-complaint as a matter of law. The court in the Waymire action rejected that defense.

In April 2022, the Lawyers moved to be relieved as Waymire's counsel, acknowledging the unwaivable conflict of interest between Waymire and the Clients. The Lawyers argued that as a consequence of the releases given by Failla to the Clients, Failla had released any claim for indemnification, but the court's ruling to the contrary demonstrated the conflict of interest they were operating under.

In addition to the conflict of interest, the Clients alleged the Lawyers were negligent in failing to draft the settlement agreement of the Failla litigation in a manner that would protect the Clients against Failla's indemnity claim. They alleged the agreement also failed to include a provision requiring Failla to indemnity the Clients in connection with any claims arising out of their dealings with Failla and his company.

Based on those facts, the Clients alleged causes of action for legal malpractice and breach of fiduciary duty against the Lawyers. The Lawyers filed a motion to strike under the anti-SLAPP law. They argued the Clients' causes of action arose, at least in part, from the Lawyers' protected activities of negotiating and drafting the settlement agreement in the Failla litigation, and their drafting and filing of the complaint against Failla on behalf of their most recent client, Waymire. They asserted that because the relief sought by the Clients is based on those "protected activities," the activities are more than "'merely incidental' or 'collateral'" to the allegations of unprotected activities, and the causes of action are therefore governed by the anti-SLAPP

4

law.  That portion of the Lawyers' motion to strike includes no citations to cases applying the anti-SLAPP law in these circumstances.  The Lawyers devoted several pages to addressing the second prong of the anti-SLAPP analysis, i.e., why the Clients could not demonstrate a probability of prevailing on the merits of their claims.

The Lawyers' motion did not rely on the fact the Failla litigation was resolved in mediation as a basis for granting the anti-SLAPP motion.  That issue was raised for the first time in the Lawyer's reply brief in which they argued the Clients' participation in mediation of the Failla litigation meant they were "'in effect, relinquishing all claims for new and independent torts arising from mediation, including legal malpractice causes of action against their own counsel.'"  (Quoting *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 133.)

Because the Lawyers raised a new issue in their reply brief, the trial court gave the Clients an opportunity to address the issue in a supplemental brief.  The Clients argued the court should disregard the argument raised for the first time in the Lawyers' reply, and alternatively argued the mediation privilege did not apply because their causes of action arose primarily from the Lawyers' breach of the duty of loyalty, which did not occur during the mediation.

The trial court denied the motion; it reasoned the Lawyers' alleged wrongs did not arise out of protected activity, and thus the anti-SLAPP law did not apply.  Having reached that conclusion, the court declined to address whether the Clients had demonstrated a probability of prevailing on the merits.

## DISCUSSION

The Lawyers' argument is based on the assertion the allegations of the FAC "all stem from the confidential mediation and settlement of the Failla Action," and they assert that such mediation-related activity must be governed by the anti-SLAPP law because to rule otherwise would chill attorneys' participation in such activity and

5

"encourage a slippery slope of impermissible judicially crafted exceptions to mediation confidentiality."

The Lawyers' focus on mediation is misplaced; they cite no cases suggesting that an attorney's participation in a mediation would—or should—be treated any differently than participation in other types of litigation-related activity for purposes of applying the anti-SLAPP law. To the extent that mediation confidentiality might become a factor, it would bear on only the second prong of the anti-SLAPP analysis— i.e., whether the plaintiff has demonstrated a probability of prevailing on the merits of the claim—which becomes a relevant consideration only after the moving party first establishes that the law applies.

### 1. The Anti-SLAPP Law

The anti-SLAPP law provides a summary mechanism to test the merit of any claim arising out of a defendant's protected speech or petitioning activities. The law authorizes courts to strike any cause of action which falls within the statute's purview, if the plaintiff cannot demonstrate a probability of prevailing on it. (§ 425.16.) "Attempting to protect against 'lawsuits brought primarily to chill' the exercise of speech and petition rights, the Legislature embedded context into the statutory preamble, 'declar[ing] that it is in the public interest to encourage continued participation in matters of public significance.'" (*FilmOn.com Inc. v. DoubleVerify Inc*. (2019) 7 Cal.5th 133, 143 (*FilmOn.com*).)

"Because our 'primary goal is to determine and give effect to the underlying purpose of' the anti-SLAPP statute," we will "liberally extend the protection of the anti-SLAPP statute where doing so would 'encourage continued participation in matters of public significance,' but withhold that protection otherwise." (*FilmOn.com, supra*, 7 Cal.5th at p. 154.)

When a party moves to strike a complaint on the basis of the anti-SLAPP law, the court engages in a two-step process to determine whether a defendant's motion to

6

strike should be granted. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)

Only if the court finds the defendant has made that required showing, does the burden shift to the plaintiff to demonstrate "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568.)

We review an order made pursuant to the anti-SLAPP law on a de novo basis. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 ["Whether section 425.16 applies and whether the plaintiff has shown a probability of prevailing are both reviewed independently on appeal"].) "While we are required to construe the statute broadly, we must also adhere to its express words and remain mindful of its purpose." (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 864, fn. omitted.)

2.      *The Protected Activity Prong*

The anti-SLAPP law applies only to "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).)

The statute defines an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue'" to include specific categories of speech and petitioning activities, including: (1) any statements or writings made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any statements or

7

writings made in connection with an issue under consideration or review by any such body or official proceeding; (3) any oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest. (§ 425.16, subd. (e)(1-3).)

A defendant who files a special motion to strike bears the initial burden of demonstrating that the challenged cause of action arises from protected activity. (*Equilon, supra,* 29 Cal.4th at p. 67.) A cause of action does not "arise from" protected activity simply because it is filed after protected activity took place. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-77.) Similarly, the fact "[t]hat a cause of action arguably may have been triggered by protected activity" does not necessarily mean that it arises from such activity. (*Id.* at p. 78.)

As our Supreme Court has explained, "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 78.) In other words, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*Ibid.*) And "[i]n deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (*Id.* at p. 79.)

In this case, the Lawyers' alleged wrongful conduct potentially takes two forms. First, the Clients allege the Lawyers were negligent in failing to draft the release language in the Failla litigation in a manner that protected them from future indemnity claims by Failla. The Lawyers' assertions during oral argument notwithstanding, we find this to be a "'garden variety legal malpractice action,'" which is not protected by the anti-SLAPP law. (*Kolar v. Donahue McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1535 (*Kolar*); *PrediWave Corp. v. Simpson Thatcher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1222 (*PrediWave*).) As the *PrediWave* court reasoned, in cases

8

where clients are suing their former attorneys based upon alleged petitioning activity conducted on the clients' own behalf, "[t]he causes of action . . . categorically are not being brought 'primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition . . . .'" (*Id.* at p. 1227.)[2]

The second alleged wrong was the Lawyers' agreement to represent a new client against the Clients, using confidential information learned during their representation of the Clients, without their permission. That wrong did not occur in the context of a mediation.

The Lawyers' alleged wrong is grounded in the notion that a "fundamental value of our legal system is the attorney's obligation of loyalty. Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process." (*People ex rel. Dept of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Ca1.4th 1135, 1146.)

Several cases have concluded a client's cause of action alleging an attorney has breached his or her duty of loyalty by representing a different client with conflicting interests does not implicate protected speech or petitioning activity. In *Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496, the court explained, "The fact that the complaint 'focus[es] specifically on particular statements or positions taken in connection with matters under review by a court,' as the trial court noted, does not alter the fact that the claim is not for injuries suffered by a third party caused by the attorney's advocacy but is based on the alleged breach of loyalty owed to Loanvest." (*Id.* at p. 505.)

---

[2] In the trial court, the Lawyers argued the FAC did not allege a "'garden variety' malpractice" claim that would be exempted from the anti-SLAPP law because the Failla litigation involved mediation. But they failed to explain why the mediation setting changed the nature of the malpractice claim, nor how it might undermine the analysis relied upon in *Kolar* and *PrediWave.*

9

In *Freeman v. Schack* (2007) 154 Cal.App.4th 719, the court concluded "that the principal thrust of the conduct underlying their causes of action is not Schack's filing or settlement of litigation[, but was instead] his undertaking to represent a party with interests adverse to plaintiffs, in violation of the duty of loyalty he assertedly owed them . . . ." (*Id.* at p. 732.)

In *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, the court observed "the misconduct averred in the underlying complaint is the acceptance by Sheppard Mullin of representation adverse to U.S. Fire. To the extent the complaint refers to events taking place during [the subsequent] Litigation, its evident purpose is to support the conclusion that the two matters are substantially related, therefore making Sheppard Mullin's disqualification in that litigation automatic. Thus, reference to protected activity is only incidental to the principal thrust of the complaint." (*Id.* at p. 1628.)

And in *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, the court concluded that "that respondents' causes of action do not arise from protected activity within the meaning of the anti-SLAPP statute. The foundation of each claim is the allegation that Sagaser chose to align himself with respondents' adversaries, in direct opposition to respondents' interests, thereby breaching duties of loyalty and confidentiality owed to them by virtue of a prior attorney-client relationship. Respondents' complaint specifically alleges that Sagaser violated the State Bar Rules of Professional Conduct, including rule 3–310, which is the principal thrust of their lawsuit." (*Id.* at p. 493; see also *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1189 [court explained that a client's claim against an attorney for breach of loyalty "occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client"].)

In this case, the cause of action arises out of the Lawyers' alleged decision to align themselves with a new client, whose interests conflicted with the Clients to

whom they owed a duty of loyalty, and to use the information they gleaned while representing the Clients against them. That alleged breach was not dependent on any statements the Lawyers made or did not make in connection with a matter pending in court. While those statements may have been what triggered the Clients' lawsuit, that triggering effect does not demonstrate the cause of action arose from them.

In *Renewable Resources Coalition, Inc., v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384, the trial court granted the defendants' anti-SLAPP motion, finding that while their wrongful conduct had been to improperly induce a third party to sell them the plaintiff's confidential information, the plaintiff's cause of action arose from the harm it suffered when the defendants subsequently used that information to prosecute a complaint. However, the appellate court reversed, explaining that "to determine the applicability of the anti-SLAPP statute, we look to the allegedly wrongful and injurious conduct of the defendant, *rather than the damage which flows from said conduct*." (*Id.* at pp. 396-397.)

Because neither of the wrongs allegedly committed by the Lawyers in this case are protected by the anti-SLAPP law, the trial court did not err in denying their motion to strike the FAC.

3.      *The Reasonable Probability of Prevailing Prong*

Because we have concluded the Clients' FAC does not arise from conduct protected by the anti-SLAPP law, we need not address the second prong of the anti-SLAPP analysis. We consequently need not consider whether or how the resolution of the Failla litigation in a mediation forum might affect the Clients' ability to introduce evidence or their probability of prevailing on the merits of their claims.

11

## DISPOSITION

The order is affirmed.  Respondents are entitled to their costs on appeal.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


DELANEY, J.